**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ŌURA HEALTH OY and OURARING INC.<br><br>*Plaintiffs,*<br><br>v.<br><br>ULTRAHUMAN HEALTHCARE PVT. LTD. and ULTRAHUMAN HEALTHCARE LTD.<br><br>*Defendants*. | **CASE NO.** 2:23-cv-00396[JRG/RSP]<br><br>**JURY TRIAL DEMANDED** |

# FIRST AMENDED COMPLAINT FOR PATENT AND COPYRIGHT INFRINGEMENT

Plaintiffs Ōura Health Oy and Ouraring Inc. (collectively, "Oura" or "Plaintiffs"), by and through their undersigned counsel, bring this First Amended Complaint for patent and copyright infringement against defendants Ultrahuman Healthcare Pvt. Ltd. and Ultrahuman Healthcare Ltd. (collectively, "Ultrahuman" or "Defendants").

## NATURE OF THE ACTION

1. In a bold and deliberate effort to replicate the Oura Ring, Ultrahuman has chosen to willfully infringe a number of Oura patents and copyrights. Ultrahuman has done so by blatantly copying Oura's technology, rather than innovating and developing its own products or features. Ultrahuman's efforts to copy Oura do not stop at infringement, but have extended to hiring former Oura employees, soliciting current Oura engineers, and potentially benefiting from some of its primary investors gaining access to Oura's proprietary and confidential information prior to launch of the Ultrahuman Ring. Ultrahuman has also committed multiple counts of copyright infringement by willfully infringing Oura's copyrighted social media content and user interface designs used in the Oura App. These copying efforts have resulted in an imitation product that is

intended to share the design, structure, and functionalities of Oura Ring and the Oura user experience.

2. Oura therefore brings this action against Ultrahuman for infringement of U.S. Patent Nos. 10,893,833 ("'833 patent"), 10,842,429 ("'429 patent"), 11,868,178 ("'178 patent"), and 11,868,179 ("'179 patent") (collectively, "Asserted Patents") pursuant to the patent laws of the United States, 35 U.S.C. § 1 et seq., and for copyright infringement pursuant to 17 U.S.C. § 101 et seq.

## BACKGROUND

### A. Oura is a pioneer in smart ring wearables.

3. Founded in 2013, Oura has been a pioneer in developing a smart ring that allows users to take control of their health. Oura Ring was a culmination of extensive research and development that ignored the conventional focus of counting daily steps as an artificial gauge of user's fitness. Instead, Oura set out to develop a product that accurately provides personalized insight into user's fitness and health by monitoring heart rate, temperature variations, blood oxygen levels, and movement during both sleep and active periods.

4. Oura also designed this product in an innovative and user-friendly form factor—i.e., a ring—that had not been attempted previously due to constraints that limited the electronics such as biometric sensors, accelerometers, battery, wireless transceivers, memory, and processors that could all be included in a small and unique unobtrusive design and would withstand daily wear and tear:



**Oura Ring**

5. Unlike wrist wearables, Oura Ring is designed to measure signals directly from the arteries in the finger, rather than the surface capillaries in the wrist, to capture a more accurate signal. The Oura Ring design also leverages optical sensors at multiple locations around the circumference of the finger in order to prioritize the clearest signal capture compared to wrist wearables.

6. Oura Ring has been embraced by over 1 million users, and was also featured in TIME magazine as one of the best inventions of 2020. https://time.com/collection/best-inventions-2020/5911381/oura-ring/. Oura Ring was also selected by the National Basketball Association (NBA), the Ultimate Fighting Championship (UFC), and several other organizations to equip their athletes with the most accurate and credible health technology. *See e.g.,* https://www.ufc.com/news/oura-official-health-wearable-ufc-performance-institute.

**B. Ultrahuman's copying of Oura Ring.**

7. Ultrahuman was founded in India in 2019. In 2021, Ultrahuman launched its original application ("Ultrahuman App") at the Consumer Electronics Show. The Ultrahuman App originally focused on a series of home workouts, meditations, soundscapes, music, and bedtime stories. The Ultrahuman App was integrated with the Apple® Watch for biofeedback to measure and improve the efficacy of meditation and workouts.

8. In July 2022, Ultrahuman launched a smart ring ("Ultrahuman Ring") to track sleep, movement, and recovery on the Ultrahuman App (collectively, Ultrahuman Ring and Ultrahuman App are the "Accused Instrumentalities"):



**Ultrahuman Ring**

9. The Ultrahuman Ring is intended to be an imitation of Oura Ring in its appearance, structure, and functionalities. And the similarities are not a mere coincidence. While Ultrahuman presents as an innovative start up, upon information and belief, Ultrahuman is funded in part by a sovereign wealth fund, supported by an investor who gained access to confidential and proprietary information on the Oura Ring in or around December of 2021. Moreover, Ultrahuman has hired and solicited a number of Oura's employees and engineers to assist with development of the Accused Instrumentalities.

10. By way of Ultrahuman's copying, Ultrahuman has launched a product that is intended to be an imitation of Oura Ring. For example, the Ultrahuman Ring includes the same sensors as those offered by Oura Ring, such as an infrared photoplethysmography (PPG) sensor, skin temperature sensor, optical electronics, and a 3D accelerometer.[1] Further, the battery components within the Ultrahuman Ring are also the same as those found in the Oura Ring because, on information and belief, Ultrahuman sought out the same battery supplier already used

[1] *Compare* https://ouraring.com/product/rings *with* https://www.ultrahuman.com/ring/buy/us/.

by Oura. The selected material for Ultrahuman Ring is also the same as Oura Ring: durable titanium with a non-allergenic, non-metallic inner molding, resulting in the Ultrahuman Ring having an identical look and feel to the Oura Ring.

11. A cumulative result is a product attempting to mimic Oura Ring:

| **Oura Ring** | **Ultrahuman Accused Instrumentalities** |
| --- | --- |
|  |  |

12. Even the design of the chargers is nearly identical between Oura and Ultrahuman:

| **Oura Ring** | **Ultrahuman Accused Instrumentalities** |
| --- | --- |
|  |  |

13. Ultrahuman has also resorted to copying Oura's copyrighted social media content (the Oura Copyrighted Landscape Design and the Oura Copyrighted 3D Ring Image) and Oura's user interface design from Oura App:

| **Oura**<br>**Copyrighted Landscape Design** | **Ultrahuman**<br>**Infringing Landscape Design** |
|---|---|
| <br><br>**Published**: Dec. 29, 2022<br>https://www.instagram.com/p/CmwYMOLueU7/?img_index=1 | <br><br>**Published**: June 23, 2023<br>https://www.instagram.com/p/Ct0z1rGI7kq/?img_index=1 |
| **Oura Coyrighted 3D Ring Image** | **Ultrahuman Infringing 3D Ring Image** |
| <br>**Published**: Feb. 15, 2018<br>https://www.instagram.com/p/BfOop6Yl21t/ | <br>**Published**: June 26, 2023<br>https://www.instagram.com/p/Ct8cVWtI4mN/?img_index=1 |

| Oura App (With User Interface of Copyrighted Imagery, Text, and Graphics) | Ultrahuman Accused Instrumentalities |
|---|---|
|  |  |
|  |  |


ŌURA
Aug 28
Yesterday
Today
READINESS
88
Optimal
Nice timing!
Great job pausing and recharging your body and mind. Your well-timed nap improved your Readiness Score.
SLEEP
87
Optimal
12 am
4 am
8 am
12 pm
7h 21m
60 bpm


TODAY
Recovery Score
88
Performance boost achieved
Your HRV balance score was decent yesterday and your recovery scores are in great shape today. You might want to push a little more towards your cognitive and physical fitness goals.
Sleep Index
90
Optimal sleep volume
You got enough sleep hours today. This helps with higher recovery, cognitive and immune system function.
10:21 PM
06:30 AM
7h 44m
Sleep duration
50
Avg heart rate


Awake 0h 39m
REM 2h 0m 27 %
Light 4h 9m 56 %
Deep 1h 18m 17 %


Sleep Stages
Awake 34m • 7%
REM Sleep 2h 16m • 28%
Light Sleep 4h 17m • 53%
Deep Sleep 58m • 12%


22:07
00
02
04
6:13


10:00
00:00
02:00
04:00
06:04






Average HRV
31 ms
Max 70 ms
WHY THE GAPS?
80
60
40
20
0
31
4:14 AM
6 AM
8 AM
10 AM
11:27 AM


Heart Rate Variability
HRV Zone
35-35 ms
WHY THE GAPS?
7-Day Average Baseline - 35ms
80
57
33
10
04:27
6 AM
8 AM
10:47


Lowest heart rate
59 bpm
Average 64 bpm
WHY THE GAPS?
80
70
60
50
40
64
4:14 AM
6 AM
8 AM
10 AM
11:27 AM


Heart Rate
Lowest Heart Rate
59 BPM
Average 68 BPM
90
77
63
50
Lowest HR Zone
04:27
6 AM
8 AM
10:47













14. The Accused Instrumentalities, which amount to nothing more than an imitation product, are now offered for sale to customers in the United States:




https://www.Ultrahuman.com/ (annotated) (Last visited: Aug. 18, 2023).

15. Ultrahuman Ring is also offered for sale and sold through third parties such as Amazon.com to customers throughout the United States, including to this District:[2]




## THE PARTIES

16. Ōura Health Oy is a Finnish company with its principal place of business at Elektroniikkatie 10, 90590, Oulu, Finland.

17. Ouraring Inc. is a Delaware corporation with its principal place of business at 222 Kearny Street, 7th Floor, San Francisco, California 94108.

18. On information and belief, defendant Ultrahuman Healthcare Pvt. Ltd. is an Indian Non-Government Company incorporated in India with its principal place of business located at No. 4088/799, Third Floor, V K Paradise Sector-2, HSR Layout, Bengaluru, Karnataka 560102, India.

19. On information and belief, defendant Ultrahuman Healthcare Ltd. is a wholly owned subsidiary of Ultrahuman Healthcare Pvt. Ltd., and is incorporated under the laws of the

[2] https://www.amazon.com/Ultrahuman-Ring-AIR-Sleep-Tracking-Temperature/dp/B0CB8WZRSB?ref_=v_sp_product_dpx (Visited: Aug. 23, 2023)

United Kingdom. Ultrahuman Healthcare Ltd. maintains its principal place of business at 5 New Street Square, London, United Kingdom.

20. On information and belief, Defendants are part of the same corporate structure and distribution chain with respect to the manufacture, use, offer for sale, and/or sale of the Accused Instrumentalities and with respect to the importation of those Accused Instrumentalities into the United States.

**JURISDICTION AND VENUE**

21. This Court has original subject matter jurisdiction over Plaintiffs' patent and copyright infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the patent claims arise under the patent laws of the United States of America, Title 35 of the United States Code, 35 U.S.C. §101 *et seq*. and the copyright infringement claim arises under Title 17 of the United States Code, 17 U.S.C. §101 *et seq*.

22. This Court has personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute at least because, among other reasons, Defendants have committed acts within this District giving rise to this action. On information and belief, Defendants have purposefully manufactured and/or distributed the Accused Instrumentalities that infringe Oura patents through established distribution channels with the expectation that those products would be sold in the United States, the State of Texas, and in this District. Defendants have committed and continue to commit acts of patent infringement in the United States, the State of Texas and this District by, among other things, importing, offering to sell, and/or selling products that infringe the Asserted Patents. On information and belief, a substantial part of the events giving rise to Plaintiffs' claims, including acts of patent infringement, have occurred in the State of Texas and this Judicial District. Accordingly, Defendants have established minimum contacts within Texas and purposefully

availed themselves of the benefits of the State of Texas, and the exercise of personal jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

23. For example, Defendants import, sell, and offer to sell the Accused Instrumentalities through websites including Ultrahuman.com, Amazon.com, and Kickstarter.com, each of which may be accessed throughout the United States, the State of Texas, and this District.

24. Venue over Defendants is proper in this district under 28 U.S.C. §§ 1391(c)(3) and 1400(b) because, on information and belief, Defendants are foreign entities, as identified above in paragraphs 18 and 19. 28 U.S.C. § 1391(c); *In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) (holding that "[t]he Court's recent decision in *TC Heartland* does not alter" the alien-venue rule).

## **COUNT I**
## **(Infringement of Plaintiffs' '833 Patent)**

25. Plaintiffs reallege and incorporate by reference the allegations of all preceding paragraphs of this First Amended Complaint, as if fully set forth herein.

26. Plaintiff Ōura Health Oy is the owner by assignment of the '833 patent, entitled "Wearable Electronic Device and Method for Manufacturing Thereof." The '833 patent was duly and legally issued by the United States Patent and Trademark Office on January 19, 2021. A true and correct copy of the '833 patent is attached to this First Amended Complaint as **Exhibit A**.

27. In violation of 35 U.S.C. § 271(a), Ultrahuman has and continues to directly, indirectly, or under the doctrine of equivalents, infringe one or more claims of the '833 patent by making, using, offering for sale, selling, or importing devices and software that practice the '833 patent, including but not limited to the Accused Instrumentalities.

28. In violation of 35 U.S.C. § 271(b) and (c), Ultrahuman has and continues to willfully induce others to infringe and/or contribute to infringing the '833 patent by wearing and

using the Accused Instrumentalities. Ultrahuman also offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

29. The Accused Instrumentalities infringe at least independent claim 1 of the ’833 patent. Claim 1 of the ’833 patent recites:

> 1. A wearable electronic device comprising:
>
> a body part made of a non-ceramic material, having an inner surface and an outer surface, wherein at least one cavity is formed on the inner surface of the body part, the at least one cavity extending from the inner surface of the body part towards the outer surface of the body part and having a depth arranged within the inner surface of the body part,
>
> an electronic part arranged in said at least one cavity, which electronic part has a thickness that is less than the depth of the at least one cavity, and
>
> a coating made of a moldable filler material on the inner surface of the body part, covering the electronic part and the at least one cavity.

30. The Ultrahuman Ring, as a component of the Accused Instrumentalities, is a wearable electronic device. Indeed, Ultrahuman advertises its ring as the “most comfortable wearable” while depicting a user wearing the Accused Product:




https://www.ultrahuman.com/ring/buy/us/ (annotated) (Last visited: Aug. 21, 2023).

31. The Accused Instrumentalities also include electronics such as sensors and a battery, thus constituting a wearable electronic device:

| | |
|---|---|
| Sensors | Infrared Photoplethysmography (PPG) sensor<br>Non-contact medical-grade skin temperature sensor<br>6-axis motion sensors<br>Red LEDs (heart rate monitoring and oxygen saturation)<br>Green LEDs (heart rate monitoring)<br>Infrared LEDs (heart rate monitoring) |
| Battery | Rechargeable, non-replaceable 24mAh LiPo battery<br>Last up to 6 days on a full charge<br>1.5 - 2 hours to fully charge the Ring from 0% to 100% |

*Id.*




https://www.Ultrahuman.com/ (annotated) (Last visited: Aug. 21, 2023).

32. The Accused Instrumentalities include a body part made of a non-ceramic material. For example, Ultrahuman advertises that the "outer shell is made from fighter jet grade Titanium reinforced with Tungsten Carbon coating":

| | |
|---|---|
| Material | The outer shell is made from fighter jet grade Titanium reinforced with Tungsten Carbide Carbon coating, making it resistant to everyday wear and tear<br><br>The inners of the ring is coated with medical-grade hypoallergenic epoxy resin, making it comfortable to wear at all times |

https://www.ultrahuman.com/ring/buy/us/ (annotated) (Last visited: Aug. 21, 2023).

33. The body part of the Ultrahuman Ring, as a component of the Accused Instrumentalities, includes an inner surface and an outer surface, and at least one cavity that is formed on the inner surface of the body part, the at least one cavity extending from the inner surface of the body part towards the outer surface of the body part and having a depth arranged within the inner surface of the body par:




https://www.ultrahuman.com/ (annotated) (Last visited: Aug. 21, 2023)

34. The Ultrahuman Ring, as a component of the Accused Instrumentalities, also includes an electronic part that is arranged in said at least one cavity, where the electronic part has a thickness that is less than the depth of the at least one cavity:




*Id.* (annotated).

35. The Ultrahuman Ring, as a component of the Accused Instrumentalities, also includes a coating made of a moldable filler material on the inner surface of the body part, covering

the electronic part and the at least one cavity. For example, Ultrahuman advertises that the "inners of the ring is [sic] coated with medical-grade hypoallergenic epoxy resin":

| | |
|---|---|
| Material | The outer shell is made from fighter jet grade Titanium reinforced with Tungsten Carbide Carbon coating, making it resistant to everyday wear and tear<br><br>The inners of the ring is coated with medical-grade hypoallergenic epoxy resin, making it comfortable to wear at all times |

https://www.ultrahuman.com/ring/buy/us/ (annotated) (Last visited: Aug. 21, 2023).

36. Ultrahuman also illustrates that the coating covers the electronic parts and the at least one cavity:




https://www.ultrahuman.com/ (annotated) (Last visited: Aug. 21, 2023).

37. On information and belief, Ultrahuman has been fully aware of and has had knowledge, or should have had knowledge, of the '833 patent since at least Jan. 19, 2021 – the issuance date of the '833 patent – or at the latest as of the filing of the Original Complaint.

38. Because of Ultrahuman's infringing activities, Oura has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial. Ultrahuman's acts are or were deliberate and willful, and will continue unless enjoined by this Court.

## COUNT II
**(Infringement of Plaintiffs' '429 Patent)**

39. Plaintiffs reallege and incorporate by reference the allegations of all preceding paragraphs of this First Amended Complaint, as if fully set forth herein.

40. Plaintiff Ōura Health Oy is the owner by assignment of the '429 patent, entitled "Method and System for Assessing a Readiness Score of a User." The '429 patent was duly and legally issued by the United States Patent and Trademark Office on November 24, 2020. A true and correct copy of the '429 patent is attached to this First Amended Complaint as **Exhibit B**.

41. In violation of 35 U.S.C. § 271(a), Ultrahuman has and continues to directly, indirectly, or under the doctrine of equivalents, infringe one or more claims of the '429 patent by making, using, offering for sale, selling, or importing devices and software that practice the '429 patent, including but not limited to the Accused Instrumentalities.

42. In violation of 35 U.S.C. § 271(b) and (c), Ultrahuman has and continues to willfully induce others to infringe and/or contribute to infringing the '429 patent by wearing and using the Accused Instrumentalities. Indeed, Ultrahuman induces others to practice a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '429 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

43. The Accused Instrumentalities infringe at least independent claim 1 of the '429 patent. Claim 1 of the '429 patent recites:

> 1. A method for assessing readiness of a user, the method comprising:
>
> obtaining the user's movements;
>
> using the obtained user's movements to determine a nature of the period, wherein the nature of the period is selected from an activity period and a rest period;
>
> measuring at least one biosignal of the user during the rest period;

> determining a rest summary for the rest period, based on the measured at least one biosignal and at least one biosignal of a previous rest period;
>
> determining an activity summary for the activity period, based on the obtained movements of an activity period and obtained movements of at least one previous activity period;
>
> determining a body response summary based on the rest summary and the activity summary;
>
> calculating a readiness score based on the body response summary and a previous body response summary, whereby the readiness score indicates a level of readiness of the user; and
>
> using a user interface of the mobile communication device to show elements contributing to the readiness score and instructions related to physical activity and mental activity for improving the readiness score.

44. The Accused Instrumentalities assess readiness of a user by calculating a "Recovery Score," which Ultrahuman indicates is "an aggregate measure of five parameters determining your body's preparedness for the next day. It is a percentage measure from 0-100, a higher (85 or above) number indicating better recovery."[3]:




[3] https://blog.ultrahuman.com/blog/ultrahuman-ring-recovery-score-guide/#:~:text=The%20Ultrahuman%20Ring's%20recovery%20score,above)%20number%20indicating%20better%20recovery.

45. To assess the readiness of the user and calculate a readiness score, Ultrahuman obtains the user's movements. *Id.* ("How is it calculated? Ultrahuman Ring calculates the recovery score based on five factors – sleep, ***movement***, temperature, resting heart rate and HRV. Each factor further has its measurement indices to arrive at individual values.") (emphasis added).

46. Ultrahuman also uses the obtained user's movements to determine a nature of the period, wherein the nature of the period is selected from an activity period and a rest period:



## 2. Movement Index

Movement is an important indicator representing how much rest and recovery your body needs.

Moderate physical activity helps regulate the body's circadian rhythm (sleep-wake cycle), directly impacting your metabolic health and ultimately impacting your recovery.
If your activity level is high on a particular day, your body may require more rest than usual. The converse is also true, where if your body has not moved enough, the recovery score will get affected, showing you that you need to get in more physical activity.

Movement Index will give insight into how balanced your activity has been throughout the day and the movement or rest you require thereafter.

*Id.*

47. In assessing the readiness of the user, Ultrahuman measures at least one biosignal of the user during the rest period. On information and belief, Ultrahuman measures at least one or more of resting heart rate, HRV form, and body temperature during the resting period. *See e.g., id.* ("Ultrahuman Ring gives you a holistic picture of your sleep quality, contributors of which are sleep efficiency, total sleep, REM sleep, deep sleep and sleep timing. These, coupled with your heart rate value, arrive at an assessment of your total sleep quality.").

48. Ultrahuman also determines a rest summary for the rest period, based on the measured at least one biosignal and at least one biosignal of a previous rest period. For example, Ultrahuman calculates a "Sleep Quotient" that represents one example of a summary of the rest period that, on information and belief, is based on a measured biosignal of multiple rest periods:




*Id.* (annotated).

49. Ultrahuman also determines an activity summary for the activity period, based on the obtained movements of an activity period and obtained movements of at least one previous activity period. For example, Ultrahuman calculates a "Movement Index" that represents one example of the activity summary that, on information and belief, is based on movements of at least one previous activity period:




*Id.* (annotated).

50. On information and belief, Ultrahuman determines a body response summary based on the rest summary and the activity summary. *Id.* ("[S]leep and movement make up a major chunk of the recovery score").

51. Ultrahuman also calculates a readiness score based on the body response summary and a previous body response summary, whereby the readiness score indicates a level of readiness of the user. For example, Ultrahuman calculates a response summary that is based on the readiness score over multiple days that determines the body's preparedness for the day. *Id.*:




*Id.*

52. Ultrahuman uses a user interface of the mobile communication device to show elements contributing to the readiness score and instructions related to physical activity and mental activity for improving the readiness score:




*Id.* (annotated).

53. On information and belief, Ultrahuman has been fully aware of and has had knowledge, or should have had knowledge, of the ’429 patent since at least Nov. 24, 2020 – the issuance date of the ’429 patent – or at the latest as of the filing of the Original Complaint.

54. By reason of Ultrahuman’s infringing activities, Oura has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial. Ultrahuman’s acts are or were deliberate and willful, and will continue unless enjoined by this Court.

**COUNT III**
**(Infringement of Plaintiffs’ ’178 Patent)**

55. Plaintiffs reallege and incorporate by reference the allegations of all preceding paragraphs of this First Amended Complaint, as if fully set forth herein.

56. Plaintiff Ouraring, Inc. is the owner by assignment of the ’178 patent, entitled “Wearable Computing Device.” The ’178 patent was duly and legally issued by the United States Patent and Trademark Office on January 9, 2024. A true and correct copy of the ’178 patent is attached to this First Amended Complaint as **Exhibit C**.

57. In violation of 35 U.S.C. § 271(a), Ultrahuman has and continues to directly, indirectly, or under the doctrine of equivalents, infringe one or more claims of the ’178 patent by making, using, offering for sale, selling, or importing devices that practice the ’178 patent, including but not limited to the Accused Instrumentalities.

58. In violation of 35 U.S.C. § 271(b) and (c), Ultrahuman has and continues to willfully induce others to infringe and/or contribute to infringing the ’178 patent by wearing and using the Accused Instrumentalities. Ultrahuman also offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such

patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

59. The Accused Instrumentalities infringe at least independent claim 1 of the ’178 patent. Claim 1 of the ’178 patent recites:

> 1. A finger-worn wearable ring device, comprising:
>
> an external housing component defining an outer circumferential surface of the finger-worn wearable ring device;
>
> an internal housing component defining an inner circumferential surface of the finger-worn wearable ring device, the internal housing component coupled with the external housing component, wherein at least a portion of the inner circumferential surface of the internal housing component is configured to contact a tissue of a user when the finger-worn wearable ring device is being worn by the user;
>
> a battery positioned within a cavity formed between the internal housing component and the external housing component, wherein the battery comprises a shape and size configured to fit within the cavity between the outer circumferential surface of the external housing component and the inner circumferential surface of the internal housing component, and wherein the battery extends through at least a first portion of the cavity of the finger-worn wearable ring device;
>
> a printed circuit board disposed between the internal housing component and the external housing component, wherein the printed circuit board extends through at least a second portion of the cavity of the finger-worn wearable ring device different from the first portion; and
>
> one or more sensors electrically coupled with the printed circuit board and the battery and configured to acquire data from the user through the internal housing component.

60. The Ultrahuman Ring, as a component of the Accused Instrumentalities, is a finger-worn wearable ring device:




https://www.ultrahuman.com/ring/buy/us/



Form factor so discreet, it's easy to forget you're wearing it but hard to ignore its capabilities.

*Id.*

61. The Ultrahuman Ring, as a component of the Accused Instrumentalities, also includes an external housing component defining an outer circumferential surface of the finger-worn wearable ring device:




*Id.*

62. The Ultrahuman Ring, as a component of the Accused Instrumentalities, also includes an internal housing component defining an inner circumferential surface of the finger-worn wearable ring device:




*Id.*

63. The Ultrahuman Ring, as a component of the Accused Instrumentalities, further includes the internal housing component coupled with the external housing component:







*Id.*

64. The Ultrahuman Ring, as a component of the Accused Instrumentalities, further includes at least a portion of the inner circumferential surface of the internal housing component is configured to contact a tissue of a user when the finger-worn wearable ring device is being worn by the user:




https://www.ultrahuman.com/ring/buy/us/




*Id.*

65. The Ultrahuman Ring, as a component of the Accused Instrumentalities, further includes a battery positioned within a cavity formed between the internal housing component and the external housing component, wherein the battery comprises a shape and size configured to fit within the cavity between the outer circumferential surface of the external housing component and the inner circumferential surface of the internal housing component:




https://www.instagram.com/p/Ct8cVWtI4mN/?img_index=1 (Annotated)




https://www.ultrahuman.com/ring/buy/us/ (Annotated)

| | |
|---|---|
| **Battery** | Rechargeable, non-replaceable 24mAh LiPo battery<br>Last up to 6 days on a full charge<br>2 - 3 hours to fully charge the Ring from 0% to 100% |

https://www.ultrahuman.com/ring/buy/us/

66. In the Ultrahuman Ring, the battery extends through at least a first portion of the cavity of the finger-worn wearable ring device:




https://www.ultrahuman.com/ring/buy/us/ (annotated)

67. The Ultrahuman Ring, as a component of the Accused Instrumentalities, further includes a printed circuit board disposed between the internal housing component and the external housing component:




https://www.instagram.com/p/Ct8cVWtI4mN/?img_index=1 (Annotated).




*Id.*

68. The Ultrahuman Ring, as a component of the Accused Instrumentalities, further includes the printed circuit board extends through at least a second portion of the cavity of the

finger-worn wearable ring device different from the first portion:




https://www.ultrahuman.com/ring/buy/us/

69. The Ultrahuman Ring, as a component of the Accused Instrumentalities, includes one or more sensors electrically coupled with the printed circuit board and the battery and configured to acquire data from the user through the internal housing component:

| | |
|---|---|
| **Sensors** | Infrared Photoplethysmography (PPG) sensor |
| | Non-contact medical-grade skin temperature sensor |
| | 6-axis motion sensors |
| | Red LEDs (heart rate monitoring and oxygen saturation) |
| | Green LEDs (heart rate monitoring) |
| | Infrared LEDs (heart rate monitoring) |

https://www.ultrahuman.com/ring/buy/us/




https://www.ultrahuman.com/




*Id.*




*Id.*

70. On information and belief, Ultrahuman has been fully aware of and has had knowledge, or should have had knowledge, of the ’178 patent since at least January 9, 2024 – the issuance date of the ’178 patent – or at the latest as of the filing of this First Amended Complaint.

71. Because of Ultrahuman’s infringing activities, Oura has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial. Ultrahuman’s acts are or were deliberate and willful, and will continue unless enjoined by this Court.

**COUNT IV**
**(Infringement of Plaintiffs’ ’179 Patent)**

72. Plaintiffs reallege and incorporate by reference the allegations of all preceding paragraphs of this First Amended Complaint, as if fully set forth herein.

73. Plaintiff Ouraring, Inc. is the owner by assignment of the ’179 patent, entitled “Wearable Computing Device.” The ’179 patent was duly and legally issued by the United States Patent and Trademark Office on January 9, 2024. A true and correct copy of the ’179 patent is

attached to this First Amended Complaint as **Exhibit D**.

74. In violation of 35 U.S.C. § 271(a), Ultrahuman has and continues to directly, indirectly, or under the doctrine of equivalents, infringe one or more claims of the ’179 patent by making, using, offering for sale, selling, or importing devices that practice the ’179 patent, including but not limited to the Accused Instrumentalities.

75. In violation of 35 U.S.C. § 271(b) and (c), Ultrahuman has and continues to willfully induce others to infringe and/or contribute to infringing the ’179 patent by wearing and using the Accused Instrumentalities. Ultrahuman also offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

76. The Accused Instrumentalities infringe at least independent claim 1 of the ’179 patent. Claim 1 of the ’179 patent recites:

> 1. A wearable computing device, comprising:
>
> a housing comprising an interior wall and an exterior wall of the wearable computing device;
>
> a printed circuit board disposed within the housing;
>
> a plurality of sensors electrically coupled with the printed circuit board, the plurality of sensors configured to acquire data from a user, the plurality of sensors comprising:
>
> > one or more light-emitting components configured to emit light associated with two or more wavelengths, wherein the two or more wavelengths include a first wavelength associated with infrared light and a second wavelength associated with visible light; and

> > one or more light-receiving components configured to receive the light associated with the two or more wavelengths;
>
> one or more processors configured to process the data acquired by the plurality of sensors based at least in part on a reflectance, an absorbance, or both of the received light associated with the two or more wavelengths; and
>
> a communication module communicatively coupled with the plurality of sensors, the one or more processors, or both, the communication module configured to transmit the data acquired by the plurality of sensors, an analysis of the data generated by the one or more processors, or both, to a user device.

77. The Accused Instrumentalities infringe at least independent claim 1 of the '179 patent. Claim 1 of the '179 patent recites:

78. The Ultrahuman Ring, as a component of the Accused Instrumentalities, is a wearable computing device:




https://www.ultrahuman.com/ring/buy/us/ (annotated)

79. The Ultrahuman Ring, as a component of the Accused Instrumentalities, includes a housing comprising an interior wall and an exterior wall of the wearable computing device:




https://www.instagram.com/p/Ct8cVWtI4mN/?img_index=1 (Annotated).

80. The Ultrahuman Ring, as a component of the Accused Instrumentalities, includes a printed circuit board disposed within the housing:




*Id.*

81. The Ultrahuman Ring, as a component of the Accused Instrumentalities, includes a plurality of sensors electrically coupled with the printed circuit board, the plurality of sensors

configured to acquire data from a user:

| | |
|---|---|
| **Sensors** | Infrared Photoplethysmography (PPG) sensor |
| | Non-contact medical-grade skin temperature sensor |
| | 6-axis motion sensors |
| | Red LEDs (heart rate monitoring and oxygen saturation) |
| | Green LEDs (heart rate monitoring) |
| | Infrared LEDs (heart rate monitoring) |

https://www.ultrahuman.com/ring/buy/us/




https://www.ultrahuman.com/




https://www.ultrahuman.com/

82. The Ultrahuman Ring, as a component of the Accused Instrumentalities, includes sensors that comprise one or more light-emitting components configured to emit light associated with two or more wavelengths, wherein the two or more wavelengths include a first wavelength associated with infrared light and a second wavelength associated with visible light:

| | |
|---|---|
| **Sensors** | Infrared Photoplethysmography (PPG) sensor |
| | Non-contact medical-grade skin temperature sensor |
| | 6-axis motion sensors |
| | Red LEDs (heart rate monitoring and oxygen saturation) |
| | Green LEDs (heart rate monitoring) |
| | Infrared LEDs (heart rate monitoring) |

https://www.ultrahuman.com/ring/buy/us/



https://www.youtube.com/watch?v=5pOhHR0MLsg (Ultrahuman Official YouTube) at 0:12.

83. The Ultrahuman Ring, as a component of the Accused Instrumentalities, includes one or more light-receiving components configured to receive the light associated with the two or more wavelengths. On information and belief, Ultrahuman Accused Product includes

light-sensitive photodiodes to receive the light associated with the two or more wavelengths transmitted by the one or more LED sensors:

| | |
|---|---|
| **Sensors** | Infrared Photoplethysmography (PPG) sensor |
| | Non-contact medical-grade skin temperature sensor |
| | 6-axis motion sensors |
| | Red LEDs (heart rate monitoring and oxygen saturation) |
| | Green LEDs (heart rate monitoring) |
| | Infrared LEDs (heart rate monitoring) |

https://www.ultrahuman.com/ring/buy/us/



https://www.youtube.com/watch?v=5pOhHR0MLsg (Ultrahuman Official YouTube) at 0:12.

84. On information and belief, the Ultrahuman Ring, as a component of the Accused Instrumentalities, includes one or more processors configured to process the data acquired by the plurality of sensors based at least in part on a reflectance, an absorbance, or both of the received light associated with the two or more wavelengths:



https://www.ultrahuman.com/

| | |
|---|---|
| **Sensors** | Infrared Photoplethysmography (PPG) sensor |
| | Non-contact medical-grade skin temperature sensor |
| | 6-axis motion sensors |
| | Red LEDs (heart rate monitoring and oxygen saturation) |
| | Green LEDs (heart rate monitoring) |
| | Infrared LEDs (heart rate monitoring) |

https://www.ultrahuman.com/ring/buy/us/

85. The Ultrahuman Ring, as a component of the Accused Instrumentalities, includes a communication module communicatively coupled with the plurality of sensors, the one or more processors, or both, the communication module configured to transmit the data acquired by the plurality of sensors, an analysis of the data generated by the one or more processors, or both, to a user device:

| | |
|---|---|
| **Connectivity** | Bluetooth Low Energy (BLE5)<br>Automatic firmware updates via the Ultrahuman App<br>Compatible with iPhones running iOS 14 or later and Android devices running Android 6 or later.<br>EMF radiation safe |

*Id.*

86. On information and belief, Ultrahuman has been fully aware of and has had knowledge, or should have had knowledge, of the '179 patent since at least January 9, 2024 – the issuance date of the '179 patent – or at the latest as of the filing of this First Amended Complaint.

87. Because of Ultrahuman's infringing activities, Oura has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial. Ultrahuman's acts are or were deliberate and willful, and will continue unless enjoined by this Court.

**COUNT V**
**(Copyright Infringement Under 17 U.S.C. § 101 et seq.)**

88. Plaintiffs reallege and incorporate by reference the allegations of all preceding paragraphs of this First Amended Complaint, as if fully set forth herein.

89. Plaintiff Ōura Health Oy is the owner of the copyrights in original photography, graphics, and text that it has published on *inter alia* Plaintiffs' Instagram social media account, mobile app, and/or website.

90. One such copyrighted work owned by Plaintiff Ōura Health Oy consists of an image of a ring depicted as if standing vertically on its side and displayed at an angle showing both the exterior and interior surfaces, in the center of an outdoor landscape and framed by one small white-bordered rectangular box within a larger white-bordered rectangle, with accompanying text displayed in black lettering against a white background (hereinafter, the "Oura Copyrighted Landscape Design"):

| Oura Copyrighted Landscape Design |
| --- |
|  |
| https://www.instagram.com/p/CmwYMOLueU7/?img_index=1 |

91. Oura first published the Oura Copyrighted Landscape Design on its Instagram social media page on or about December 29, 2022.

92. In addition, Oura owns the copyright in the original combination and arrangement of words, data, designs, and colors used in connection with the User Interface on its Oura App, including nonliteral elements generated from copyrighted source code and object code such as the structure, sequence, organization, user interface, screen displays, and menu structures, representative images of which are shown immediately below (hereinafter the "Oura Copyrighted User Interface Design"):

**Oura App (With User Interface of Copyrighted Imagery, Text, and Graphics)**





























93. Plaintiffs first published the Oura Copyrighted User Interface Design on the Oura

App in or about 2015. Additionally, Oura registered the Oura Copyrighted User Interface Design with the U.S. Copyright Office on or about June 21, 2023. *See* Registration Nos. TX 9-288-710 and TX 9-228-702.

94. Collectively, the Oura Copyrighted Landscape Design, the Oura Copyrighted 3D Ring Image, and the Oura Copyrighted User Interface Design are referred to herein as the "Oura Copyrighted Works."

95. Without authorization from Plaintiffs, Ultrahuman has directly, vicariously, and/or contributorily infringed Plaintiffs' rights in the Oura Copyrighted Works by reproducing, displaying, and/or distributing unauthorized copies of the works in violation of 17 U.S.C. § 501 *et seq*.

96. Specifically, as shown by the below side-by-side images, Ultrahuman has willfully infringed each of the Oura Copyrighted Works by reproducing, displaying, and/or distributing works that are identical or substantially similar to the Oura Copyrighted Works:

| **Oura**<br>**Copyrighted Landscape Design** | **Ultrahuman**<br>**Infringing Landscape Design** |
|---|---|
|  |  |

| **Published**: Dec. 29, 2022 https://www.instagram.com/p/CmwYMOLueU7/?img_index=1 | **Published**: June 23, 2023 https://www.instagram.com/p/Ct0z1rGI7kq/?img_index=1 |
|---|---|
| **Oura App (With User Interface of Copyrighted Imagery, Text, and Graphics)** | **Ultrahuman Accused Instrumentalities** |
|  |  |
|  |  |


ŌURA
Aug 28
Yesterday
Today
READINESS
88
Optimal
Nice timing!
Great job pausing and recharging your body and mind. Your well-timed nap improved your Readiness Score.
SLEEP
87
Optimal
12 am
4 am
8 am
12 pm
7h 21m
60 bpm


TODAY
Recovery Score
88
Performance boost achieved
Your HRV balance score was decent yesterday and your recovery scores are in great shape today. You might want to push a little more towards your cognitive and physical fitness goals.
Sleep Index
90
Optimal sleep volume
You got enough sleep hours today. This helps with higher recovery, cognitive and immune system function.
10:21 PM
06:30 AM
7h 44m
Sleep duration
50
Avg heart rate


Awake 0h 39m
REM 2h 0m 27 %
Light 4h 9m 56 %
Deep 1h 18m 17 %


Sleep Stages
Awake 34m • 7%
REM Sleep 2h 16m • 28%
Light Sleep 4h 17m • 53%
Deep Sleep 58m • 12%


22:07
00
02
04
6:13


10:00
00:00
02:00
04:00
06:04




71
Sleep Index
71
Recovery Score
2.59KM


Average HRV
31 ms
Max 70 ms
WHY THE GAPS?
80
60
40
20
0
31
4:14 AM
6 AM
8 AM
10 AM
11:27 AM


Heart Rate Variability
HRV Zone
35-35 ms
WHY THE GAPS?
7-Day Average Baseline - 35ms
80
57
33
10
04:27
6 AM
8 AM
10:47



















97. Upon information and belief, Ultrahuman has reproduced, displayed, and/or

distributed the infringing works since, respectively, approximately June 23, 2023 (the Ultrahuman Infringing Landscape Design), approximately June 26, 2023 (the Ultrahuman Infringing 3D Ring Image), and approximately July 2022 (the Ultrahuman Infringing User Interface Design).

98. Collectively, the Ultrahuman Infringing Landscape Design, Ultrahuman Infringing 3D Ring Image, and Ultrahuman Infringing User Interface Design are referred to herein as the "Infringing Ultrahuman Works."

99. Upon information and belief, Ultrahuman has reproduced, displayed, and/or distributed the Infringing Ultrahuman Works on *inter alia* its Instagram social media account and its Ultrahuman mobile app, both of which are accessible to and target United States consumers.

100. Plaintiffs have never assigned, licensed, or otherwise transferred to Ultrahuman any rights in the Oura Copyrighted Works, nor have Plaintiffs ever authorized Ultrahuman to copy, display, distribute, or license the Oura Copyrighted Works.

101. Ultrahuman, either directly or indirectly, infringed the Oura Copyrighted Works for its own commercial gain to the unjust exclusion of Plaintiffs.

102. By the acts stated herein, Ultrahuman has directly, vicariously, and/or contributorily infringed the copyrights in the Oura Copyrighted Works in violation of §§ 106 and 501 of the Copyright Act, 17 U.S.C. § 101, *et seq*.

103. Ultrahuman's infringement of Plaintiffs' rights in and to each of the copyrighted works constitutes a distinct act of infringement.

104. Upon information and belief, Ultrahuman knew or should have known that its conduct constituted copyright infringement.

105. Ultrahuman's conduct was willful within the meaning of the Copyright Act.

106. Plaintiffs have been damaged by Ultrahuman's conduct, including but not limited

to economic loss. Plaintiffs continue to be damaged by such conduct and have no adequate remedy at law to compensate Plaintiffs for all the possible damages stemming from Ultrahuman's conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgement as follows:

a) Declaring that Ultrahuman has infringed the Asserted Patents and the Oura Copyrighted Works and that such infringement was willful;

b) Awarding damages in an amount to be proved at trial, but in no event less than a reasonable royalty for its infringement of the Asserted Patents including pre-judgment and post-judgment interest at the maximum rate permitted by law;

c) With regard to copyright infringement, awarding damages in an amount to be proved at trial, but in no event less than (i) all profits realized by Ultrahuman as a result of its unlawful infringing acts as complained of herein pursuant to 17 U.S.C. § 504 and (ii) all actual damages suffered as a result of Ultrahuman's unlawful infringing acts complained of herein pursuant to 17 U.S.C. § 504;

d) In the alternative, that Ultrahuman be required to pay Plaintiffs statutory damages for infringement of the Oura Copyrighted Works pursuant to 17 U.S.C. § 504 and that such infringement was willful;

e) Ordering a permanent injunction enjoining Ultrahuman, its officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with Ultrahuman from infringing the Asserted Patents and the Oura Copyrighted Works;

f) Ordering an award of reasonable attorneys' fees to Plaintiffs as provided by 35 U.S.C. § 285 and 17 U.S.C. § 505;

g) Awarding expenses, costs, and disbursements in this action, including prejudgment interest; and

h) Awarding such other and further relief as the Court deems just and proper.

DATED: March 14, 2024

Respectfully submitted,

/s/ *Shaun W. Hassett*
Shaun W. Hassett, State Bar No. 24074372
**POTTER MINTON, PC**
102 North College, Suite 900
Tyler, TX 75702
Tel: 903.597.8311
shaunhassett@potterminton.com

**ARENTFOX SCHIFF LLP**
Janine A. Carlan
Jasjit S. Vidwan *(pro hac vice)*
Ross Q. Panko (*pro hac vice*)
1717 K Street, NW
Washington, DC 20006-5344
Tel: 202.857.6000
janine.carlan@afslaw.com
ross.panko@afslaw.com
jasjit.vidwan@afslaw.com

*ATTORNEYS FOR PLAINTIFFS*

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically on March 14, 2024, pursuant to Local Rule CV-5(a) and has been served via electronic mail on counsel having signed waivers of service on behalf of Defendants [Dkt. 5 and 6].

John T. Moehringer
John.moehringer@cwt.com

/s/ *Shaun W. Hassett*