**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ŌURA HEALTH OY and OURARING INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-CV-0396-JRG-RSP |
| | ) | |
| ULTRAHUMAN HEALTHCARE PVT. LTD. | ) | |
| and ULTRAHUMAN HEALTHCARE LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO STAY PENDING FINAL RESOLUTION OF**
**ITC INVESTIGATION**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL BACKGROUND .................................................................................. 3

III.    LEGAL STANDARD ............................................................................................ 5

    A.    Mandatory Stay Pursuant to 28 U.S.C. § 1659(a) ...................................... 5

    B.    Discretionary Stay Pursuant to the Court's Inherent Authority ............................. 5

IV.     THE COURT MUST STAY AT LEAST THREE OF OURA'S FOUR PATENT
INFRINGEMENT CLAIMS PURSUANT TO 28 U.S.C. § 1659(a) ...................... 6

V.      THE COURT SHOULD STAY OURA'S REMAINING CLAIMS PURSUANT TO
ITS INHERENT AUTHORITY ............................................................................ 7

    A.    Oura Already Conceded that Stay of the '833 Patent Claim is Warranted ............ 8

    B.    A Stay Would Not Unduly Prejudice Oura Or Cause a Clear Tactical
Disadvantage .............................................................................................. 8

    C.    A Stay Would Simplify the Issues and Conserve Judicial Resources .................... 11

        1.    Non-Overlapping Patent Claim ............................................................. 11

        2.    Non-Overlapping Copyright Claims ....................................................... 12

    D.    This Case is Still in its Infancy, Favoring a Stay ....................................... 15

VI.     CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arris Enterprises LLC v. Sony Corp.*,
  No. 17-CV-02669, 2017 WL 3283937 (N.D. Cal. Aug. 1, 2017) ................................. 9, 10, 11

*Avago Techs. U.S. Inc. v. IPtronics, Inc.*,
  No. 10-CV-02863, 2013 WL 623042 (N.D. Cal. Feb. 15, 2013) ............................................. 6

*Black Hills Media, LLC v. Samsung Elecs. Co.*,
  No. 13-CV-379, 2014 WL 12951780 (E.D. Tex. Mar. 17, 2014) (Gilstrap, J.C.)...... 6, 7, 12, 15

*Cywee Grp. Ltd. v. HTC Corp.*,
  No. C17-0932, 2019 WL 3860303 (W.D. Wash. Aug. 16, 2019) ........................ 10, 11, 13, 15

*Dagel v. Resident News, LLC*,
  No. 11-CV-663, 2012 WL 2068727 (N.D. Tex. June 8, 2012) ............................................... 14

*Evolved Wireless, LLC v. Samsung Elecs. Co.*,
  No. 21-CV-00033, 2021 WL 7161368 (E.D. Tex. Mar. 10, 2021) (Gilstrap, C.J.)............... 6, 7

*Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.*,
  No. 05CV156, 2005 WL 1126750 (N.D. Ohio Apr. 29, 2005) .................................... 9, 10, 12

*Fuji Photo Film Co. v. Benun*,
  463 F.3d 1252 (Fed. Cir. 2006).............................................................................................. 5

*In re Princo Corp.*,
  478 F.3d 1345 (Fed. Cir. 2007)............................................................................................... 5

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936).............................................................................................................. 5, 6

*Metrom Rail, LLC v. Siemens Mobility, Inc.*,
  No. 23-CV-3057, 2024 WL 323374 (S.D.N.Y. Jan. 29, 2024) ............................................. 14

*NFC Tech. LLC v. HTC Am., Inc.*,
  No. 13-CV-1058, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ........................... 6, 11, 12, 15

*PopSockets LLC v. Quest USA Corp.*,
  No. 17CV3653, 2018 WL 4660374 (E.D.N.Y. Sept. 28, 2018).........................................11, 13

*Richtek Tech. Corp. v. UPI Semiconductor Corp.*,
  No. C 09-05659, 2011 WL 445509 (N.D. Cal. Feb. 3, 2011) ................................ 12, 13, 14, 15

*Soverain Software LLC v. Amazon.com, Inc.*,
  356 F. Supp. 2d 660 (E.D. Tex. 2005) ........................................................................ 6

*Spa Syspatronic, AG v. Verifone, Inc*., No. 07-CV-416,
  2008 WL 1886020 (E.D. Tex. April 25, 2008) ......................................................... 6

*Texas Instruments Inc. v. Tessera, Inc.*,
  231 F.3d 1325 (Fed. Cir. 2000) ................................................................................. 5

*Zenith Elecs. LLC v. Sony Corp.*,
  No. C 11-02439, 2011 WL 2982377 (N.D. Cal. July 22, 2011) ............................... 7

**Statutes**

28 U.S.C. § 1659 ............................................................................................... 1, 5, 6, 7

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1360, at 3 (3d ed. 2013) ........ 6

H.R. Rep. NO. 103–826(I) ..................................................................................... 7

Defendants Ultrahuman Healthcare Pvt. Ltd. and Ultrahuman Healthcare Ltd. (collectively, "Ultrahuman") hereby move for an unopposed, mandatory stay under 28 U.S.C. § 1659(a) of Plaintiffs Ōura Health Oy and Ouraring Inc.'s (collectively, "Oura") claims for patent infringement of U.S. Patent Nos. 10,842,429 (the "'429 Patent), 11,868,178 (the "'178 Patent") and 11,868,179 (the "'179 Patent"), pending resolution of the parallel proceeding before the International Trade Commission ("ITC"). Ultrahuman further moves for a discretionary stay of Oura's claim for patent infringement of U.S. Patent No. 10,893,833 (the "'833 Patent") and claims for copyright infringement, also pending the ITC Action – which Oura opposes.

## I.   INTRODUCTION

The dispute over Ultrahuman's requested Motion to Stay is narrow and straightforward. Three out of the four asserted patents are subject to a mandatory stay under 28 U.S.C. § 1659(a), as they are identical to the claims asserted in the related ITC proceeding. Oura does not disagree. Instead, Oura only opposes a discretionary stay of its sole non-overlapping patent claim for the '833 Patent, as well as its associated copyright claims. Oura thus seeks to sever the non-overlapping claims and hold two separate litigations involving the same accused products. But this is inconsistent with Congress's intent to protect against burdensome parallel litigation. Instead, a stay of the non-overlapping '833 Patent and copyright claims is warranted under this Court's three-factor test for evaluating motions to stay.

All three factors favor granting the stay. **First**, Oura will not be unduly prejudiced by a stay. In fact, it was Oura that initiated a parallel ITC investigation and deliberately decided not to include the non-overlapping '833 Patent and the copyright claims. **Second**, a full stay will simplify the issues in this case by allowing the Court to benefit from the discovery and rulings in the parallel ITC investigation, avoid any inconsistent determinations, and conserve resources by consolidating the issues into one litigation rather than proceeding on two separate tracks – first with respect to

the '833 Patent and copyright claims and then another with respect to the three overlapping patents. **Third**, this case is in its literal infancy, providing the parties and the Court the full efficiencies of staying this case while the ITC investigation is completed.

Notably, Oura already acknowledged in a related district court action against another ITC respondent -- Circular[1] -- that the three-part analysis supports a discretionary stay of the '833 Patent claim. There, the parties told the court that the '833 Patent was "direct[]ly related" to the same subject matter as those at issue in the ITC case and that "a stay pending final resolution of the ITC Action w[ould] minimize duplicative litigation, promote judicial efficiency, and help conserve the parties' and th[e] Court's resources." *See* Ex. 1 (Joint Motion to Stay) at 2-3. The same would equally apply here. Each of Oura's claims in the present case – both patent and copyright – involve the same accused products and rely on overlapping facts about the accused products and their application user interface, thereby inextricably linking them. Therefore, just as Oura represented to the court in the *Circular* Action, a denial of the discretionary stay here would similarly create "duplicative and overlapping motion practice and discovery," while granting it, conversely, would "prevent piecemeal litigation" and conserve resources. *See* Ex. 1 at 6-7.

For these reasons, set forth in further detail below, Ultrahuman respectfully requests that the Court stay the present action in its entirety, pending final resolution of the related ITC Action, *In the Matter of Certain Smart Wearable Devices, Systems, and Components Thereof*, Inv. No. 337-TA-1398 (referred to herein as the "ITC Action"), including all appeals.

---

[1] This litigation, *i.e.*, *Oura Health Oy v. Circular SAS*, No. 6-22-cv-00478-ADA (W.D.T.X.), will be referred to hereinafter as the "*Circular* Action."

## II.    FACTUAL BACKGROUND

On September 1, 2023, Oura filed its original complaint in the present action against Ultrahuman for patent and copyright infringement. Oura's original complaint only asserted the '833 Patent and '429 Patent against Ultrahuman. *See* Dkt. 1 at ¶2.

Oura had also previously filed a complaint for patent infringement against another company named Circular SAS ("Circular") on May 11, 2022, asserting the '833 Patent and the '429 Patent. *See* Ex. 2 (*Circular* Action, Complaint). Notably, in its complaint against Circular, Oura cites to the '833 Patent to describe both asserted patents as generally directed to the same subject matter, *i.e.*, "novel wearable devices, such as rings, for 'analysing and processing biological signals[.]'" *Id.* at ¶9 (quoting the '833 Patent at 1:65-67; Figure 1).

On January 9, 2024, while the two district court actions were pending, two new patents issued to Oura: the '178 Patent and the '179 Patent. Like the '833 Patent, the claims of the '178 and '179 Patents generally encompass the structural and functional components of a wearable smart ring device. *See* Dkt. 9-1 ('833 Patent) at cl. 1, Dkt. 9-3 ('178 Patent) at cl. 1, Dkt. 9-4 ('179 Patent) at cl. 1. Relatedly, the '429 Patent generally encompasses assessing and displaying specific information derived from the data collected by the device. *See* Dkt. 9-2 ('429 Patent) at cls. 1, 8.

On March 13, 2024, Oura filed a complaint in the ITC against, *inter alia*, Circular and Ultrahuman,[2] asserting patent infringement of the '178 Patent, '179 Patent, and '429 Patent.[3] Unlike in the related district court actions, and despite covering similar subject matter, Oura chose not to assert the '833 Patent against any party. The ITC Action was instituted on April 12, 2024

---

[2] Unlike the present action, Oura also included Ultrahuman Healthcare SP LLC as a party to the ITC complaint. Ultrahuman Healthcare SP LLC is a wholly-owned subsidiary of Ultrahuman Healthcare Pvt. Ltd., a party to both this case and the ITC Action.

[3] Oura filed a Verified Second Amended Complaint in the ITC on May 7, 2024, only to update the name and address information for the RingConn respondents. *See* Ex. 4 at 1.

(*see* Ex. 9 at 1-2), and the final determination is scheduled to issue in less than a year, *i.e.*, no later than April 18, 2025. *See* Ex. 3 (ITC Action, Order No. 7) at 2.

One day after filing its ITC complaint, on March 14, 2024, Oura filed its First Amended Complaint against Ultrahuman in the present case, adding patent infringement claims for the '178 and '179 patents. *See* Dkt. 9 at ¶2. Oura's patent infringement claims for the ITC Action thus involve three out of the four patents asserted here. All of Oura's patent infringement claims – both here and in the ITC – involve the same Ultrahuman accused products, *i.e.*, Ultrahuman's ring product (*i.e.*, the "Ring AIR") and the Ultrahuman App. *See, e.g.*, Dkt. 9 at ¶8 (defining "Accused Instrumentalities"), Ex. 4 (ITC Action, Verified Second Amended Complaint) at ¶23 (defining "Accused Products").[4] Ultrahuman has not yet responded to the First Amended Complaint (*see* Dkt. 12), and no discovery has been taken by either party. In fact, the scheduling conference was only recently set for May 29, 2024. *See* Dkt. 13.

In contrast to this case, the parties in the *Circular* Action have already exchanged initial and final contentions, held a *Markman* Hearing, and received a claim construction order. *See, e.g.*, Ex. 5 (*Circular* Action, *Markman* Order). Oura also has not yet moved to amend its complaint in that case to include either the '178 or '179 Patents; thus, the only patents asserted there are the '833 and '429 Patents. But this still means that just like in the present case, Oura's patent infringement claims also include a claim involving the same '833 Patent not asserted in the ITC. Despite the progressed status of the case and the additional '833 Patent claim, Circular and Oura jointly moved

---

[4] Oura accuses the "Ultrahuman Ring" of patent infringement in the present action but expressly identifies both the "Ultrahuman Ring" and "Ultrahuman Ring AIR" as accused products in the ITC Action. To avoid confusion, Ultrahuman notes that the "Ultrahuman Ring AIR" is the current iteration of Ultrahuman's ring product and is the only ring product that Ultrahuman presently manufactures and offers for sale. *See* https://www.ultrahuman.com/products/us/?invite=products. Without waiving any argument in this or the ITC case, and strictly for the purposes of this motion, Ultrahuman will treat the "Ultrahuman Ring" and "Ultrahuman Ring AIR" as the same product.

the district court on April 22, 2024, to stay its entire case pending final resolution of the ITC Action, including any appeals. *See* Ex. 1 at 1. Per both parties, a stay "serve[d] the interests of judicial economy and efficiency," which the court promptly granted. *Id.* at 2; Ex. 6 (Order Granting Motion to Stay). For these same reasons, Ultrahuman also seeks a complete stay of the case pending final resolution of the ITC Action. But Oura now opposes that, even though Ultrahuman makes the same arguments that Oura made just **three weeks ago** in the *Circular* Action.

## III.   LEGAL STANDARD

### A.   Mandatory Stay Pursuant to 28 U.S.C. § 1659(a)

A patentee may bring parallel suits in both district court and the ITC against a party that imports an allegedly infringing product. *Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1330 (Fed. Cir. 2000). But 28 U.S.C. § 1659 includes a mandatory stay provision that "places limits on the timing of [these] parallel actions." *Fuji Photo Film Co. v. Benun*, 463 F.3d 1252, 1256 (Fed. Cir. 2006). The provision explicitly states:

> In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission, but only if such request is made within (1) 30 days after the party is named as a respondent in the proceeding before the Commission, or (2) 30 days after the district court action is filed, whichever is later.

28 U.S.C. § 1659(a). The purpose of this provision "is to prevent separate proceedings on the same issues occurring at the same time." *In re Princo Corp.*, 478 F.3d 1345, 1355 (Fed. Cir. 2007).

### B.   Discretionary Stay Pursuant to the Court's Inherent Authority

Apart from the mandatory stay provision of 28 U.S.C. § 1659(a), the Court also has the authority to stay proceedings in its cases at its discretion. This discretionary power is "incidental to the power inherent in every court to control the disposition of the causes on its docket with

economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936); *Spa Syspatronic, AG v. Verifone, Inc*., No. 07-CV-416, 2008 WL 1886020, at *1 (E.D. Tex. April 25, 2008). How best to manage the Court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55. Courts often consider motions to stay "in an effort to maximize the effective utilization of judicial resources and to minimize the possibility of conflicts between different courts." 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1360, at 3 (3d ed. 2013). The Court's discretionary power to stay extends to patent infringement claims that are "related to" patent claims asserted in a parallel action. *See, e.g.*, *Avago Techs. U.S. Inc. v. IPtronics, Inc*., No. 10-CV-02863, 2013 WL 623042, at *2 (N.D. Cal. Feb. 15, 2013).

> In rendering a decision on discretionary stay, this Court considers three factors:
>
> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

*See Black Hills Media, LLC v. Samsung Elecs. Co.*, No. 13-CV-379, 2014 WL 12951780, at *1 (E.D. Tex. Mar. 17, 2014) (Gilstrap, J.C.). Notably, courts have analyzed these same factors when considering motions to stay pending parallel proceedings before the Patent Office. *See, e.g.*, *NFC Tech. LLC v. HTC Am., Inc.*, No. 13-CV-1058, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015) (granting stay pending *inter partes* review ("IPR")); *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662–63 (E.D. Tex. 2005) (considering factors for pending reexamination).

## IV.    THE COURT MUST STAY AT LEAST THREE OF OURA'S FOUR PATENT INFRINGEMENT CLAIMS PURSUANT TO 28 U.S.C. § 1659(a)

Per this Court, "a District Court 'shall stay' parallel litigation" with an ITC proceeding under 28 U.S.C. § 1659 "'until the determination of the Commission becomes final'" if (1) the district court action involves parties that are also parties in the ITC proceeding; (2) "the claims for

which the stay is requested . . .'involve[ ] the same issues'" as those before the ITC; and (3) the stay is requested by a respondent before the ITC "within thirty days of being named as a respondent before the ITC, or within thirty days of the District Court action being filed, whichever is later." *Evolved Wireless, LLC v. Samsung Elecs. Co.*, No. 21-CV-00033, 2021 WL 7161368, at *1 (E.D. Tex. Mar. 10, 2021) (Gilstrap, C.J.) (quoting 28 U.S.C. § 1659(a)) (granting stay).

This is directly the case here for Oura's patent infringement claims involving the '178, '179, and '429 Patents. Each party here is also a party in the ITC Action. All of these patents are also the subject of Oura's infringement allegations against Ultrahuman in the ITC Action. Moreover, Ultrahuman files this motion within thirty days of the ITC's institution of the investigation on April 12, 2024. *See* Ex. 9 at 1-2. The foregoing is not contested by Oura. Thus, the statutory requirements to stay at least the patent infringement claims for the '178, '179, and '429 Patents have been indisputably met, and so stay should be granted.

Thus, the only remaining issues are whether the Court should also grant a discretionary stay of Oura's '833 Patent infringement claim and corresponding copyright claims. It should.

## V.   THE COURT SHOULD STAY OURA'S REMAINING CLAIMS PURSUANT TO ITS INHERENT AUTHORITY

"Congress explicitly intended that district courts should consider using their discretionary power to stay patent infringement litigation that is related to, but not duplicative of, an action before the ITC." *Zenith Elecs. LLC v. Sony Corp.*, No. C 11-02439, 2011 WL 2982377, at *2 (N.D. Cal. July 22, 2011) (citing H.R. Rep. NO. 103–826(I), at 141) (granting-in-part motion to stay pending ITC action). As Oura recognizes, this includes staying cases involving one or more claims not before the ITC. *See* Ex. 1 at 5; *see also Black Hills*, 2014 WL 12951780, at *1 (granting stay pending ITC action where only four of the nine asserted patents were before the ITC).

### A.    Oura Already Conceded that Stay of the '833 Patent Claim is Warranted

At the outset, Oura already conceded in the *Circular* Action that staying the non-overlapping infringement claim of the '833 Patent was proper under these same circumstances. Indeed, the similarities between the present case and the *Circular* Action are striking. Both cases involve the same plaintiff, assert infringement of the same '429 and '833 Patents, and the defendants are also both respondents in the same ITC Action brought by Oura. And in that same ITC Action, Oura re-asserts the same '429 Patent against both Ultrahuman and Circular along with two additional patents that issued in January – the '178 and '179 Patents. Oura decided, however, not to assert the '833 Patent against either Ultrahuman or Circular in the ITC. Yet, unlike in the *Circular* Action, Oura opposes a stay of the non-overlapping '833 Patent claim here. Oura's position is nonsensical, egregious, and entirely belied by its own arguments in the *Circular* Action.

For example, as conceded by Oura in its joint motion in the *Circular* Action:

> "A discretionary stay of this action until the ITC Action is finally resolved will serve the interests of judicial economy and efficiency. Commonalities exist with all of the patents asserted in the parallel district court and the ITC actions. For example, the same product is accused of infringement in both actions. The ITC Action has been instituted, and . . . there have been no depositions and no substantial document production by either side. Accordingly, a stay of this action will avoid piecemeal and unnecessary duplicative litigation, and help to conserve the parties' and the Court's resources."

Ex. 1 at 2. All of this is equally (and irrefutably) true here too, and Oura should not be allowed to defeat this motion to stay by walking-back the same arguments on which it relied to secure a stay in a related proceeding. The underlying facts are no different, and the application of the same three factors should result in the identical conclusion. A discretionary stay is warranted.

### B.    A Stay Would Not Unduly Prejudice Oura Or Cause a Clear Tactical Disadvantage

Oura will not suffer any undue prejudice by a stay of its '833 Patent and copyright claims. The lack of prejudice is evident from the fact that it was Oura's own decision to not include

the '833 Patent and copyright allegations in the ITC proceeding. Oura elected to file its ITC petition and First Amended Complaint one day apart, and it deliberately chose to pursue in the ITC every patent asserted here except the '833 Patent. Furthermore, the voluntary stay sought in the *Circular* Action with respect to the '833 Patent highlights the lack of prejudice to Oura of staying those claims, as well as the absence of any tactical advantage by a similarly situated defendant.

Indeed, any allegation of prejudice is belied by Oura's representation in the *Circular* Action that denying a stay of the '833 Patent claim would actually "[w]ork a [h]ardship" on Oura. *See* Ex. 1 at 6. Per Oura, "the asserted patents and accused products in both the ITC Action and the instant action are very similar, and without a stay, the parties would likely have to conduct duplicative and overlapping motion practice and discovery." *Id.* And Oura is correct.

For example, because the '833 Patent relates to the same subject matter as the overlapping patents and is asserted against the same accused products as the overlapping patents, "the depositions of witnesses who are knowledgeable on the accused products and at least [the] overlapping inventor[s] between the non-overlapping ['833 Patent] patent and [the '429 Patent] asserted in the ITC" would be relevant to both the ITC Action, as well as the non-overlapping patent infringement claim here. *See, e.g.*, *Arris Enterprises LLC v. Sony Corp.*, No. 17-CV-02669, 2017 WL 3283937, at *3 (N.D. Cal. Aug. 1, 2017) (granting motion to stay the entire case where four of the five asserted patents were also asserted in the ITC). Thus, "[w]ithout a stay [as to the '833 Patent claim], the parties would have to conduct multiple depositions of the same witnesses because of their ability to speak only to the non-overlapping patent while the overlapping patents are stayed," which is burdensome. *See id.* Put another way, should the Court stay all but one of Oura's patent infringement claims, "this case would essentially be relitigated after the lifting of the mandatory stay." *See, e.g.*, *Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.*, No. 05CV156,

2005 WL 1126750, at *3 (N.D. Ohio Apr. 29, 2005) (noting that "two rounds of discovery would ensue absent a stay" pending the related ITC action where, like here, "the majority of th[e] case against the[] defendants [was] subject to" the statutory mandatory stay).

In view of this, Oura recognizes that "[f]orcing the parties to litigate the non-overlapping claims" in the present case would "create additional discovery beyond the mere effort of defending a lawsuit," which prejudices Ultrahuman and favors a stay. *See* Ex. 1 at 6 (quoting *Arris*, 2017 WL 3283937, at *3). Thus, Oura's opposition to this motion is not rooted in law or fact; rather, it is pure gamesmanship designed to punish Ultrahuman at the expense of this Court's time and resources. Oura clearly recognizes the undue hardship a denial would bring to this case, and it should not be permitted to selectively burden only certain courts and parties.

Oura will also not suffer any undue prejudice by a stay of its copyright claims for similar reasons. Like the '833 Patent claim, Oura's copyright claims involve overlapping issues and discovery with its overlapping patent claims, particularly for the '429 Patent. Thus, if this Court stays Oura's overlapping patent claims, but not its copyright claims, the parties would likely have to conduct multiple depositions of the same witnesses, *e.g.*, engineers and experts, regarding Ultrahuman's mobile app design. Thus, as with the '833 Patent claim, a denial of a stay could lead to duplicative discovery and motion practice that is costly and burdensome. *See, e.g.*, *Flexsys*, 2005 WL 1126750, at *3; *Arris*, 2017 WL 3283937, at *3. Thus, denying to stay Oura's copyright claims would likely be more prejudicial to Oura than granting the stay, weighing in favor of the stay.

Moreover, any potential prejudice that Oura may face via a stay is completely minimized by the fact that the ITC is expected to issue its final determination in less than a year. *See* Ex. 3 (ITC Action, Order No. 7 at 2); *see also Cywee Grp. Ltd. v. HTC Corp.*, No. C17-0932, 2019 WL 3860303, at *8 (W.D. Wash. Aug. 16, 2019) (noting that a "complete stay" of all claims pending

IPR, including non-patent claims, would not be unduly prejudicial because the PTAB's final determination was expected to issue within a year of institution.)

Finally, Oura's decision not to pursue any preliminary injunctive relief against Ultrahuman – especially on its non-overlapping patent and copyright claims – undercuts any assertion of prejudice from staying these claims. *See, e.g.*, *Cywee Grp.*, 2019 WL 3860303, at *8 (cleaned up). And any argument that prejudice should be presumed simply because Oura and Ultrahuman are competitors is unavailing. *See, e.g.*, *PopSockets LLC v. Quest USA Corp.*, No. 17CV3653, 2018 WL 4660374, at *2 (E.D.N.Y. Sept. 28, 2018) (rejecting proposition prejudice can be presumed when the parties are direct competitors requiring at least "some evidence of prejudice.")

Accordingly, this factor weighs in favor of staying the Non-Overlapping Claims.

### C.     A Stay Would Simplify the Issues and Conserve Judicial Resources

For the same reasons that Oura contended that the "[s]tay of the '833 Patent-Related Claims" would simplify the *Circular* Action, a stay of the '833 Patent claim, as well as Oura's copyright claims, would likewise simplify the issues here. *See* Ex. 1 at 7-8.

#### 1.     Non-Overlapping Patent Claim

As Oura concedes, the '833 Patent is "directly related to the same subject matter" as the other patents asserted in both the ITC Action and the present case. *See id.* at 2. In fact, the '833 Patent shares common inventors with the '429 Patent. *Compare* Dkt. 9-1 *with* Dkt. 9-2. Further, just like with *Circular*, both the ITC Action and this case "involve the same accused products." *See* Ex. 1 at 8. Given all these similarities between the present action and the ITC Action, this case could likely benefit from the discovery and rulings in the ITC Action, thereby simplifying the issues in the case, weighing in favor of a stay. *See, e.g.*, *Arris*, 2017 WL 3283937, at *4. Similarly, "if the [ITC Action] result[s] in [invalidation] of some or all of the asserted claims, either some

portion of the litigation will fall away, or the litigation will come to an end altogether," further simplifying the issues in this case and favoring a stay. *See NFC Tech.*, 2015 WL 1069111, at *4.

In addition to simplifying the issues, a stay will also help conserve judicial resources for similar reasons. As Oura acknowledges, "[c]ourts have found that a stay may preserve judicial resources where," like here, "patents challenged before the ITC and 'non-ITC challenged patents' in the district court proceedings are similar in technology, subject matter, and accused products." *See* Ex. 1 at 7-8. Relatedly, and as Oura recognizes, the present case and the ITC Action "involve the 'complex and technical area of patent … law' . . . and it is in the interest of all parties and the Court to avoid wasteful and useless duplication of the time and effort of the federal courts with the simultaneous litigation of two complex and elaborate cases involving substantially the same factual issues, claims, and defenses." *Id.* at 8 (cleaned up).

Indeed, courts generally agree to stay non-overlapping claims where, like here, litigating them would lead to significant judicial waste. *See, e.g.*, *Flexsys*, 2005 WL 1126750, at *4 (finding a stay pending parallel ITC case would "result in a tremendous savings of judicial time and resources," as without one, the court would be "faced with many of the[] same issues [both before and] after the stay is lifted"); *Black Hills*, 2014 WL 12951780, at *1 (noting that "judicial efficiency favor[ed] a stay" where eight of the nine asserted patents related to similar subject matter, and so it was "likely that th[e] case [would] present common issues of both law and fact that are best considered in a single proceeding"). This Court should do the same.

### 2. Non-Overlapping Copyright Claims

For these same reasons, the Court should stay Oura's copyright claims. That is because Oura's pending copyright claims are entangled with its patent infringement claims. And courts routinely stay such entangled claims pending resolution of the parallel proceeding. This is particularly true where, like here, the patent and non-patent claims arise from the same basic

factual theory, so that discovery for both will be "inextricably intertwined." *See, e.g.*, *Richtek Tech. Corp. v. UPI Semiconductor Corp.*, No. C 09-05659, 2011 WL 445509, at *6 (N.D. Cal. Feb. 3, 2011) (granting stay of both patent and copyright infringement claims pending reexamination); *see also PopSockets LLC*, 2018 WL 4660374, at *1–2 (staying case including patent and copyright infringement claims pending IPR, as "the patent and non-patent claims [were] legally unrelated, [but] the underlying factual disputes [were] intertwined"); *Cywee Grp.*, 2019 WL 3860303, at *8 (granting-in-part defendant's motion to stay all claims, including non-patent claims, pending IPR).

In its copyright infringement allegations, Oura alleges that its "copyrighted works" include two marketing images of the Oura ring posted on its social media account, as well as the Oura App, namely, "the original combination and arrangement of words, data, designs, and colors used in connection with the User Interface on [the] Oura App." *See* Dkt. 9 at ¶¶13, 90-94. With specific respect to the latter allegation, Oura generally alleges that its "Copyrighted User Interface Design" is infringed by the "Ultrahuman mobile app" (*see id.* at ¶¶96, 99) – the same app accused of infringing the '429 Patent (*see id.* at ¶¶39-54). In addition, Oura alleges copyright infringement by two of Ultrahuman's Instagram posts that include images of the Ring AIR – the structure of which Oura alleges is infringed by the '833, '178, and '179 Patents. *See, e.g.*, *id.* at ¶¶13, 25-38, 55-87, 96. Thus, all of Oura's claims – both patent and copyright – involve overlapping issues, as they implicate the same accused products. And that's not all. As Oura itself suggests, its patent and copyright infringement claims both stem from the same basic factual theory, *i.e.*, Ultrahuman's allegedly "bold and deliberate effort to replicate the Oura Ring." *See id.* at ¶1. Oura's claims are thus inextricably intertwined and will likely have duplicative discovery, which favors a stay.

It is worth noting that Oura only alleges to have registered two copyrights – both of which are directed to specific software versions of Oura's Mobile App for iOS and Android. *See* Dkt. 9

at ¶93. (citing Registration Nos. TX 9-288-710 (registration for "Oura iOS Mobile App v. 4.11.2.")
and TX 9-288-702[5] (registration for "Oura Android Mobile App v. 4.11.3." )); *see also* Exs. 7-8
(copies of the registrations from the official Public Copyright Catalog). Thus, the only potentially
cognizable copyright infringement claims that Oura could pursue against Ultrahuman would
implicate the software files of the parties' mobile app,[6] as "a copyright must be registered before
filing suit." *Dagel v. Resident News, LLC*, No. 11-CV-663, 2012 WL 2068727, at *8 (N.D. Tex.
June 8, 2012). In other words, the product accused of "infringing" all of Oura's remaining
copyright claims would be the ***same product*** accused of infringing Ultrahuman's '429 Patent
claims, *i.e.*, the Ultrahuman app. *See* Dkt. 9 at ¶¶39-54. This again highlights the likelihood of
duplicative discovery between the patent and non-patent claims, as, for example, the exact same
witnesses would likely need to be deposed for both the patent and non-patent claims to speak on
the design, development, and functionality of Ultrahuman' s code, further favoring a stay.

Courts have also granted stays as to non-patent claims where, like here, patent infringement
was the "main thrust" of the litigation. *See, e.g.*, *Metrom Rail, LLC v. Siemens Mobility, Inc.*, No.
23-CV-3057, 2024 WL 323374, at *2 (S.D.N.Y. Jan. 29, 2024) (cleaned up) (granting stay of non-
patent claim and noting that "[c]ourts in the Second Circuit have stayed non-patent claims
alongside patent claims where, as here, the 'patent claims are the main thrust of th[e] litigation'");
*see also Richtek*, 2011 WL 445509, at *3 (granting stay of both patent and copyright infringement
claims pending reexamination, where the patent claims were "the true meat and potatoes of th[e]

---

[5] In its Amended Complaint, Oura lists this registration number as TX 9-2**2**8-702. *See id.* However,
as TX 9-2**2**8-702 belongs to a third-party, Ultrahuman understands this to be a typographical error
and will treat it as such only for the purposes of this motion, without waiving any right or argument.

[6] To be clear, Ultrahuman has not yet responded to Oura's complaint in the present action (*see,
e.g.*, Dkt. 12) and makes no admission as to the strength or veracity of any allegation set forth in
Oura's Amended Complaint. Ultrahuman reserves all rights to challenge the sufficiency of any of
Oura's claims, including, but not limited to, under Federal Rule of Civil Procedure 12(b)(6).

action"). That is precisely the case here. Four of the five claims asserted by Oura are patent infringement claims, and the remaining copyright claims implicate many of the same factual allegations as the patent claims, as explained. This factor favors a stay for this additional reason.

**D.     This Case is Still in its Infancy, Favoring a Stay**

This Court has found this factor to favor a stay where "significant discovery remain[ed]" to be completed in the case. *See Black Hill*s, 2014 WL 12951780, at *1. And other courts have found the same, particularly where the "bulk" of the parties' expenses had not yet been incurred *See, e.g.*, *NFC Tech.* 2015 WL 1069111, at *3 (granting stay where the parties had engaged in significant discovery and claim construction briefing was complete, but bulk of parties' expenses was likely "still in the future"); *Cywee Grp.*, 2019 WL 3860303, at *6 ("the stage of the litigation favor[ed] a stay" because "the court ha[d] yet to hold a claims construction hearing, and the parties ha[d] not engaged in dispositive motions practice" for the patent claims); *Richtek*, 2011 WL 445509, at *2 (stay favored where an action "is in its early stages; [and] substantial resources have not yet been invested in discovery, claim construction, or trial preparation").

This present case is in its infancy. Oura's First Amended Complaint was only filed two months ago, and Ultrahuman has not even responded. The scheduling conference has not yet been held. There has been no discovery taken. Thus, not just the "bulk" – but nearly ***all*** of the parties' expenses remain and are "still in the future." This factor therefore weighs in favor of a stay, and Oura can make no cognizable argument otherwise.

**VI.     CONCLUSION**

For the foregoing reasons, Ultrahuman respectfully requests that this Court stay this case in its entirety pending final resolution of the ITC Action, including any appeals. Ultrahuman also respectfully requests that the Court vacate all deadlines in this case until both the stay is lifted and an order is entered setting forth revised deadlines.

Dated:  May 12, 2024                    Respectfully submitted,


                                        /s/ *Elizabeth L. DeRieux*

                                        Elizabeth L. DeRieux
                                        Texas State Bar No. 05770585
                                        CAPSHAW DERIEUX LLP
                                        114 E. Commerce Ave.
                                        Gladewater, TX 75647
                                        Telephone: 903-845-5770
                                        ederieux@capshawlaw.com

                                        John T. Moehringer
                                        New York Bar No. #2841211
                                        CADWALADER, WICKERSHAM &
                                        TAFT LLP
                                        200 Liberty Street New York, NY 10281
                                        Tel: (212) 504-6000
                                        Fax: (212) 504-6666
                                        John.Moehringer@cwt.com


                                        *Attorney for Defendants Ultrahuman
                                        Healthcare Pvt. Ltd. and Ultrahuman
                                        Healthcare Ltd.*

## CERTIFICATE  OF CONFERENCE

I, John T. Moehringer, hereby certify that counsel has complied with the meet-and-confer requirement in Local Rule CV-7(h), and that this motion is opposed. The personal conferences required by this rule were conducted telephonically between John T. Moehringer (counsel for Defendants) and Jasjit Vidwan (counsel for Plaintiffs) on Wednesday April 24, 2024, Thursday April 25, 2024, Monday May 6, 2024, and Wednesday May 8, 2024. Counsel for Plaintiffs has indicated that Plaintiffs are unopposed to this motion as to the mandatory stay under 28 U.S.C. § 1659, but they are opposed to this motion as to the requested discretionary stay. The discussions regarding the opposed-portion of this motion have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

/s/ *John T. Moehringer*
John T. Moehringer