**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ŌURA HEALTH OY and OURARING INC.<br><br>*Plaintiffs,*<br><br>v.<br><br>ULTRAHUMAN HEALTHCARE PVT. LTD. and ULTRAHUMAN HEALTHCARE LTD.<br><br>*Defendants*. | CASE NO. 2:23-CV-0396-JRG-RSP |

**<u>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY</u>**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 3

A. OURA AND ULTRAHUMAN GLOBAL LITIGATIONS .......... 3

B. PRIOR CIRCULAR ACTION .......... 5

III. LEGAL STANDARD .......... 6

IV. THE MANDATORY STAY IS NOT TRIGGERED HERE BECAUSE THE ITC ACTION DOES NOT INVOLVE THE "SAME ISSUES" AS THOSE PRESENTED IN THIS CASE .......... 7

V. THE COURT SHOULD NOT EXERCISE ITS INHERENT AUTHORITY TO STAY THE PRESENT CASE .......... 9

A. A STAY WOULD UNDULY PREJUDICE OURA AND CAUSE A CLEAR TACTICAL DISADVANTAGE .......... 9

B. A STAY WILL NOT SIMPLIFY THE ISSUES OR CONSERVE JUDICIAL RESOURCES .......... 12

1. THERE IS NO SIMPLIFICATION OF ISSUES RELATED TO COPYRIGHT INFRINGEMENT CLAIMS .......... 12

2. THERE IS ALSO NO SIMPLIFICATION OF ISSUES RELATED TO WILLFULNESS OF COPYRIGHT AND PATENT INFRINGEMENT .......... 13

C. OURA'S AGREEMENT IN THE CIRCULAR ACTION IS NOT APPLICABLE IN THIS CASE .......... 14

VI. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AGIS Software Dev. LLC v. Samsung Elecs. Co.*,
C.A. No. 2:22-CV-00263 .......... *passim*

*Clinton v. Jones*,
520 U.S. 681 (1997) .......... 6

*In re Davis*,
730 F.2d 176 (5th Cir. 1984) .......... 7

*In re Princo Corp.*,
486 F.3d 1365 (Fed. Cir. 2007) .......... 6

*In re Ramu Corp.*,
903 F.2d 312 (5th Cir. 1990) .......... 6

*Invensys Sys., Inc. v. Emerson Elec. Co.*,
No. 6:12-CV-00799, 2014 WL 4477393 (E.D. Tex. July 25, 2014) .......... 11

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .......... 6

*Oura Health Oy v. Circular SAS*,
No. 6-22-cv-00478-ADA (W.D. Tex.) .......... 5, 6, 14, 15

*Paradox Sec. Sys. Ltd. v. ADT Sec. Servs., Inc.*,
No. 2:06-CV-462 (TJW), 2008 WL 11348406, at *1 (E.D. Tex. Oct. 8, 2008) .......... 10

*SanDisk Corp. v. Phison Elec. Corp.*,
538 F. Supp. 2d 1060 (W.D. Wisc. 2008) .......... 6

*Saxon Innovations, LLC v. Palm, Inc.*,
2009 WL 3755041 (E.D. Tex. Nov. 4, 2009) .......... 6, 7

*Universal Elec., Inv. v. Universal Remote Control, Inc.*,
943 F. Supp. 2d 1028 (C.D. Cal. 2013) .......... 10

**Statutes**

19 U.S.C. § 1337(d) .......... 9

28 U.S.C. § 1659(a) .......... 1, 6, 7, 9

# I. INTRODUCTION

This case does not involve the "same issues" as the co-pending ITC Investigation to trigger either a mandatory stay under 28 U.S.C. § 1659(a) or a discretionary stay under the Court's inherent authority. For starters, this case implicates copyright infringement claims related to three copyright works and allegations of infringement of U.S. Patent No. 10,893,833 ("the '833 patent"). None of those claims are at issue before the ITC, and thus would not fall within the "same issues" requirement of § 1659(a). Defendants do not appear to dispute this distinction. Instead, Defendants' Motion is predicated on a flawed piecemeal approach.

***First***, Defendants falsely argue that the three patents that overlap here and at the ITC—U.S. Patent Nos. 10,842,429 ("the '429 patent"), 11,868,178 ("the '178 patent"), and 11,868,179 ("the '179 patent")—"are subject to a mandatory stay under 28 U.S.C. § 1659(a), as they are identical to the claims asserted in the related ITC proceeding." Dkt. 17 at 1. But Defendants improperly conflate "patents" as being synonymous with "issues" under § 1659(a). Indeed, this Court in *AGIS Software Dev. LLC v. Samsung Elecs. Co.*[1] recently rejected the argument that "same patents" necessarily means "same issues." Like in *AGIS*, here, the issues are not the same, and therefore the Court should not stay any portion of this case.

For the '429, '178, and '179 patents that overlap with the ITC investigation, the case here involves an accused product, the Ultrahuman Ring, that according to Defendants' own admission "is no longer manufactured, sold, and/or imported into the United States," and thus would not be impacted by any ITC exclusion order. Ex. 1 at 7; *id.* at 10 ("Ultrahuman Ring was in the *past* manufactured abroad and sold for importation by Ultrahuman Healthcare."); Dkt. 17 at n.4. The Ultrahuman Ring has allegedly now been replaced by a separate product: Ultrahuman Ring AIR.

[1] C.A. No. 2:22-CV-00263 JRG-RSP, 2023 WL 5351963, at *2 (E.D. Tex. Aug. 21, 2023).

*Id.* at 10; Dkt. 17 at n.4. Past damages are an appropriate remedy here, and therefore the issues before this Court would necessarily involve discovery and disputes related to the original accused product (Ultrahuman Ring) that is separate from Defendants' current product (Ultrahuman Ring AIR). Thus, for the same reasons as in *AGIS*, there is no mandatory stay as the case here involves an additional accused product.

***Second***, Defendants' request for stay ignores the significant prejudice that Oura would face from any discretionary stay. Ultrahuman has willfully infringed Oura's patented technology, copied Oura's user interface design, solicited Oura's engineers to continue the copying, replicated Oura's marketing designs to cause confusion between the Oura Ring and the accused products, potentially benefited from Ultrahuman's investors gaining access to Oura's proprietary and confidential information prior to the launch of its infringing product, initiated nuisance retaliatory suits in India, and more recently (as detailed below), impersonated Oura's CEO to spread false information about Oura—all to gain an unfair advantage in the emerging wearable ring market. While the ITC offers an expedited venue for patent holders to seek corrected measures from foreign importation of imitation products, the ITC remedies are limited to an exclusion order. As noted above, the accused Ultrahuman Ring, that is allegedly no longer sold by Ultrahuman, would be beyond the reach of any remedy offered by the ITC. Additionally, within a mere six days of the ITC initiating the investigation against Ultrahuman, Ultrahuman announced that it plans to move its manufacturing from India to the U.S. in the next six months for its current Ultrahuman Ring AIR product line,[2] thereby seeking to evade any future ITC exclusion order for even its current Ultrahuman Ring AIR accused product.

[2] Ex. 2, https://cyborg.ultrahuman.com/press-releases/made-in-the-usa-ultrahuman-plants-flag-in-us-with-manufacturing-facility-ultrafactory-to-make-first-wearable-rings-in-the-country (last accessed May 28, 2024).

Thus, Oura will be unduly prejudiced by a stay if Ultrahuman can delay the present case on all issues and evade any potential exclusion order from the ITC. A stay will also not simplify the issues for the Court. Neither the copyright claims nor the '833 patent infringement claims are before the ITC. As such, even if the ITC finds for Oura that the patents asserted at the ITC are valid and infringed, Oura would have to return to the start of this case and fully litigate the copyright and '833 patent claims. Defendants would also undoubtedly argue that the ITC's decision does not apply to any past products (i.e., Ultrahuman Ring).

Defendants' requested stay would also fail to simplify discovery. For instance, the scope of discovery at the ITC is different at least because in that forum monetary damages are not at play. The parties would at least need further discovery on that issue in any district court proceeding. Discovery in the district court would also include issues involving willfulness as it relates to both the Ultrahuman Ring and Ultrahuman Ring AIR.[3]

For all of the reasons identified above, and detailed below, Oura respectfully requests that the Court deny Defendants' Motion to Stay.

## II. FACTUAL BACKGROUND

### A. OURA AND ULTRAHUMAN GLOBAL LITIGATIONS

Founded in 2013, Oura has been a pioneer in developing and successfully bringing to market a smart ring that provides users personalized insight into their fitness and health by monitoring activity and sleep. Dkt. 9 at ¶ 3. Oura designed its product in an innovative and user-friendly form factor that departed from traditional wearable devices. *Id.* at ¶ 4. Oura also created an application that allowed users to monitor its activity and sleep with personalized insights.

[3] Indeed, Respondents at the ITC have argued that because willfulness is not an issue at the ITC, all electronic communications that could potentially shed light on willful conduct should be excluded from the scope of discovery. Plaintiffs would be entitled to discovery related to willfulness and damages in this case.

Following in Oura's footsteps, Ultrahuman launched its original infringing product, Ultrahuman Ring (also referred as "Ultrahuman Ring R1"), in July 2022 by copying Oura's entire design and business from soup to nuts, including copying the structural and functional design of the Oura Ring, the user interface design, and even Oura's marketing materials as shown in side-by-side comparison charts in Oura's First Amended Complaint. *See* Dkt. 9 at ¶¶ 11-13. The similarity of Ultrahuman's product to Oura's is not a mere coincidence. Less than one year prior to launching the infringing product, one of Defendants' investors gained access to Oura's confidential and proprietary information for the Oura Ring. *Id.* at ¶ 9.[4] Defendants have also hired and solicited a number of Oura's engineers to assist with the development of the infringing product and its corresponding application. *Id.* Defendants subsequently launched a second ring, Ultrahuman Ring AIR, in or around June 2023.

In view of Defendants' deliberate and egregious activities to copy Oura's products and intellectual property, on September 1, 2023, Oura filed its original complaint for copyright infringement and infringement of the '833 and '429 patents. Dkt. 1. On January 9, 2024, two new patents were issued to Oura: the '178 and '179 patents. On March 13, 2024, Oura filed a complaint at the ITC against, inter alia, Defendants, asserting infringement of the '178, '179, and '429 patents. And a day later, Oura filed the First Amended Complaint to add the '178 and '179 patents to the current case. Dkt. 9. On April 17, 2024, the Commission published the Notice of Institution of Investigation in the Federal Register. *See* 89 Fed. Reg. 27452. Immediately after the notice of

---

[4] As noted in the First Amended Complaint, Oura has information regarding the investor's access to Oura's confidential data room. Dkt. 9 at ¶ 9. Oura will seek discovery to determine whether, and to what extent, any of Oura's confidential information was shared with Ultrahuman to assist Ultrahuman in developing and launching the infringing product. Given the short timing between the investor gaining access to Oura's confidential information, the investor agreeing to partner with Ultrahuman, and Ultrahuman then launching a copycat product, Oura has reason to believe that confidential information was shared to assist Ultrahuman in launching a competing product.

institution, on April 23, 2024, Ultrahuman announced that it plans to start manufacturing in the United States to supply the U.S. market. Ex. 2.

As Oura has pled here, Ultrahuman's actions show Defendants' blatant copying of Oura's products and intellectual property. However, rather than address these allegations in this Court where Oura brought suit and Ultrahuman conducts business, Defendants retaliated by filing nuisance lawsuits in India against Oura and its principals (i.e., CEO and COO), where Oura has no presence, and the principals have no involvement with India in their official capacity. *See* Ex. 3. Ultrahuman's bad faith conduct does not stop there, however. Defendants have also utilized the Wikipedia platform in an effort to impersonate Oura's CEO and spread false information about Oura in attempts to attack, devalue, and harm Oura, as well as mislead the public. Ex. 4. Wikipedia's administrators promptly investigated and validated Oura's claims, removed the nefarious material, and blocked the accounts engaging in the malicious behavior. This included accounts seemingly linked to Defendants. Ex. 5.

**B. PRIOR CIRCULAR ACTION**

Prior to the emergence of Ultrahuman's copying, Oura was engaged in litigation against an entity unrelated to Defendants. *Oura Health Oy v. Circular SAS*, No. 6-22-cv-00478-ADA (W.D. Tex.) ("Circular Action"). Oura brought suit against that entity—Circular SAS ("Circular")—in the United States District Court for the Western District of Texas alleging infringement of the '833 and '429 Patents. Ex. 6. Oura's March 13, 2024 Complaint at the ITC included Circular as a named Respondent. Ex. 7. On April 22, 2024, Oura and Circular jointly moved to stay the Circular Action pending final resolution of the ITC Action. Ex. 8. That case did not include any claim for copyright infringement, any egregious facts regarding Circular's actions (contrary to what exists in this case), or any nuisance retaliatory suits by Circular against Oura.

Defendants' Motion to Stay here involves substantially different facts and circumstances. Thus, the rationales underlying a stay in the Circular Action do not apply here.

## III. LEGAL STANDARD

"In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay . . . the civil action with respect to any claim that involves the *same issues* involved in the proceeding before the Commission . . . ." 28 U.S.C. § 1659(a) (emphasis added). "The same issues includes 'questions of validity, infringement, and any defenses that might be raised in both proceedings.'" *AGIS Software*, 2023 WL 5351963 at *1; *Saxon Innovations, LLC v. Palm, Inc.*, 2009 WL 3755041 at *1 (E.D. Tex. Nov. 4, 2009). "Further, the same issues arise where the result is 'identical parallel claims.'" *AGIS Software*, 2023 WL5351963 at *2; *Saxon*, 2009 WL 3755041 at *1 (citing *SanDisk Corp. v. Phison Elec. Corp.*, 538 F. Supp. 2d 1060, 1065 (W.D. Wisc. 2008)); *In re Princo Corp*., 486 F.3d 1365, 1368 (Fed. Cir. 2007) ("The purpose of § 1659(a) was to prevent infringement proceedings from occurring 'in two forums at the same time . . . In the case of § 1659, the purpose of the statute is to avoid duplicative proceedings.'").

"Absent a cause for a mandatory stay, the district court has the inherent power to control its own docket, including the power to stay proceedings." *AGIS Software*, 2023 WL 5351963 at *1; *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990); *see Clinton v. Jones*, 520 U.S. 681, 706 (1997). The determination of whether to issue a discretionary stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). When deciding whether to stay litigation pending an ITC proceeding, this Court considers: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question

and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *AGIS Software*, 2023 WL 5351963 at *2. The movant has the burden to "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work to damage someone else." *In re Davis*, 730 F.2d 176, 178 (5th Cir. 1984).

## IV. THE MANDATORY STAY IS NOT TRIGGERED HERE BECAUSE THE ITC ACTION DOES NOT INVOLVE THE "SAME ISSUES" AS THOSE PRESENTED IN THIS CASE

Defendants' Motion starts with a flawed presumption that the Court "must stay at least three of Oura's four patent infringement claims pursuant to 28 U.S.C. § 1659(a)" because the parties and the three of the four asserted patents (i.e., '178, '179, and '429 patents) are the same in both actions. Dkt. 17 at 6-7. But that is not the complete analysis to trigger a mandatory stay.

As this Court recently held, even if the parties and patents are the same, that alone does not mean that the "issues" are the same in both actions. *AGIS Software*, 2023 WL 5351963 at *2.[5] This Court's precedent teaches that "the key consideration is whether the ITC Investigation will involve ***duplicative*** proceedings of ***identical parallel claims***." *Id.* (emphasis added); *see also Saxon Innovations*, 2009 WL 3755041 at *1. Defendants make no effort to explain whether the "same issues" are present in the two actions; they are not. *See generally* Dkt. 17 at 6-7. There can be no dispute that the copyright infringement claims related to three copyright works and patent infringement of the '833 patent are not before the ITC, and therefore the "same issues" are not present in both actions for those claims.

[5] To be clear, Oura does not dispute that 28 U.S.C. § 1659(a), as a statute, allows for stay of "same issues." But that is where any agreement stops. Here, the issues are not the same and therefore there is no mandatory stay.

But even for the overlapping '178, '179, and '429 patents, Defendants present no analysis as to why the "issues" before the ITC and this court are the same. *See* Dkt. 17 at 6-7. Nor could Defendants make that argument because, as noted above, Ultrahuman has two accused products: (1) "Ultrahuman Ring" (also referred as "Ultrahuman Ring R1") that launched in July 2022 and (2) "Ultrahuman Ring AIR" that launched June 2023. At the ITC, Ultrahuman has taken a position that the two products are separate, noting that while "the Ultrahuman Ring *was in the past* manufactured abroad and sold for importation . . . . the Ultrahuman Ring is *no longer* manufactured and/or sold for importation," and thus would not be impacted from any ITC exclusion order. Ex. 1 at 10. In contrast, "Ultrahuman Ring AIR" is the accused product that is currently manufactured abroad and sold for importation. *Id.* Thus, the product at issue at the ITC is limited to the "Ultrahuman Ring AIR," whereas this case would present issues related to both the original "Ultrahuman Ring R1" and "Ultrahuman Ring AIR," thereby addressing separate issues for the ITC and the district court.

Defendants attempt to walk a tightrope with respect to the two products in a footnote to its Motion to stay by suggesting that "[w]ithout waiving any argument in this or the ITC case, and ***strictly for the purposes of this motion***, Ultrahuman will treat the 'Ultrahuman Ring' and 'Ultrahuman Ring AIR' as the same product." Dkt. 17 at n.4 (emphasis added). But Defendants cannot have their cake and eat it too by strategically and conveniently treating the two accused devices as separate for the ITC case and the merits of this case, while simultaneously claiming that the two are the same product "strictly for the purpose of this motion." *Id.* [6]

---

[6] Prior to Ultrahuman's Motion to Stay (Dkt. 17) and Ultrahuman's Answer to the ITC Complaint that both drew distinction between the "Ultrahuman Ring" and "Ultrahuman Ring AIR," Plaintiffs had no information that Defendants had ceased selling the Ultrahuman Ring after filing of the Original Complaint in this case, and shifted entirely to Ultrahuman Ring AIR. Because Ultrahuman draws a distinction between the two products, this reinforces that the issues in the two actions are not the same.

In addition to the separate tangible rings in dispute (i.e., Ultrahuman Ring and Ultrahuman Ring AIR), Ultrahuman has also argued that the "Ultrahuman Application is not an article, and is not imported into the United States," and therefore the ITC lacks jurisdiction over the Ultrahuman Application. Ex. 1 at 41. But the Ultrahuman Application is an accused instrumentality in this case (*see* Dkt. 9 at ¶ 8) and would not be excluded from the jurisdiction of this Court. Therefore, the accused Ultrahuman Application also presents a separate issue that would be litigated on the merits in this Court but not at the ITC investigation.

In sum, the mandatory stay under § 1659(a) is not triggered here because the two cases do not relate to the "same issues," and Defendants present no arguments to the contrary.

## V. THE COURT SHOULD NOT EXERCISE ITS INHERENT AUTHORITY TO STAY THE PRESENT CASE

Having brushed over the "same issues" analysis on whether a mandatory stay is even triggered (it is not), Defendants next argue that the Court should stay all remaining claims pursuant its inherent authority through any appeals. Dkt. 17 at 7. Defendants' analysis here is also flawed.

### A. A STAY WOULD UNDULY PREJUDICE OURA AND CAUSE A CLEAR TACTICAL DISADVANTAGE

"[S]ince the ITC Investigation and this case involve different issues, the risk of prejudice in delaying Plaintiff's action weighs against a discretionary stay." *AGIS Software*, 2023 WL 5351963, at *2. Indeed, continuing the theme of ignoring inconvenient facts, Defendants omit from its Motion any reference to the fact that, since the institution of the ITC Investigation, Ultrahuman has announced that they are opening an end-to-end production facility in Indiana for production of its current Ultrahuman Ring AIR product "that opens within the next six months . . . ." Ex. 2. This would undercut the exclusion order remedy available to Oura at the ITC. *See* 19 U.S.C. § 1337(d).

Defendants' recent decision to shift its manufacturing capabilities of Ultrahuman Ring AIR to the United States a mere six days after the ITC instituted an investigation against Ultrahuman

should be seen for what it is: a clear tactical decision seeking to evade any future ITC exclusion order for the accused products. If the ITC finds Defendants are liable for patent infringement, Defendants will no doubt argue that products made in the United States are not subject to an exclusion order and will try to continue their infringing sales to the detriment of Oura until the issue is eventually resolved in this case, which could take years considering that Defendants are seeking a stay through any appeals. Dkt. 17 at 15 ("Ultrahuman respectfully requests that this Court stay this case in its entirety pending final resolution of the ITC Action, including any appeals.").

Where the parties are direct competitors in a small market, the significant delay that could result from a stay militates against granting the discretionary stay. *Paradox Sec. Sys. Ltd. v. ADT Sec. Servs.*, Inc., No. 2:06-CV-462 (TJW), 2008 WL 11348406, at *1 (E.D. Tex. Oct. 8, 2008) ("The parties are direct competitors in the home security system market and a denial of timely enforcement of either party's patent rights would indeed unduly prejudice that party."). By Ultrahuman's own admissions as part of its Public Interest Statement at the ITC, Oura and Ultrahuman are direct competitors in a small wearable ring market with limited participants. *See* Ex. 9 at 2, 5. And "[c]ourts have found that infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages." *Universal Elec., Inv. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1033 (C.D. Cal. 2013).

Indeed, the harm in the marketplace is especially elevated here given Ultrahuman's conduct in copying the Oura Ring and its continued efforts to cause confusion in the market. For example, as pled in the First Amended Complaint, Ultrahuman has hired and solicited Oura engineers to assist Ultrahuman with copying of the Oura Ring and the functionalities provided by the Oura Application. Dkt. 9 at ¶ 9; *See also id.* at 7-10 (side-by-side comparison of Oura App and

Ultrahuman App interface). Ultrahuman have also replicated the Oura marketing materials to cause direct confusion between the two products. Dkt. 9 at ¶ 13. Oura also suspects that Defendants have taken steps to explicitly access Oura's proprietary information surreptitiously prior to developing and selling its copycat products. *Id.* at ¶ 9.

More recently, individuals associated with the Defendants have made Wikipedia accounts to continuously revise Wikipedia pages for Oura in an effort to spread demonstrably false information. Exs. 4-5. Defendants' Wikipedia escapades even included an attempt to impersonate Oura's CEO so as to present him as speaking poorly regarding Oura. *Id.* Oura would be entitled to broad discovery in this case related to these issues and seek appropriate remedy after fully developing the record on Ultrahuman's conduct.

Defendants attempt to minimize the prejudice by arguing that "Oura's decision not to pursue any preliminary injunctive relief against Ultrahuman—especially on its non-overlapping patent and copyright claims—undercuts any assertion of prejudice from staying these claims." Dkt. 17 at 11. But Oura's decision not to pursue preliminary injunctive relief against Defendants is not relevant to the analysis of prejudice. *Invensys Sys., Inc. v. Emerson Elec. Co.*, No. 6:12-CV-00799, 2014 WL 4477393, at *2 (E.D. Tex. July 25, 2014) ("this Court rejects Defendants' argument that [Plaintiff] will not be unduly prejudiced by a stay because it has not sought preliminary injunctive relief. Defendants' argument does not account for the variety of factors that go into deciding whether to seek injunctive relief.").

Simply put, the prejudice that Oura will face is too great in a competitor-to-competitor suit, especially considering the shifting sands on business strategy in a small developing market. The Court should not reward Ultrahuman's conduct by granting it a discretionary stay that would disadvantage Oura.

### B. A STAY WILL NOT SIMPLIFY THE ISSUES OR CONSERVE JUDICIAL RESOURCES

The lack of simplification that would be gained from staying this case further weighs against granting a discretionary stay. Indeed, this case involves copyright and willfulness issues unrelated to the ITC proceeding. As such, there would be no simplification that could be achieved from a stay.

#### 1. THERE IS NO SIMPLIFICATION OF ISSUES RELATED TO COPYRIGHT INFRINGEMENT CLAIMS

As an initial matter, there is no rational argument to support Defendants' contention that Oura's copyright infringement claims "involve overlapping issues and discovery with its overlapping patent claims." Dkt. 17 at 10. Copyright infringement is an entirely different body of law than patent infringement, requiring different burdens, proofs, legal questions, and factual inquiries. Here, as pled by Oura, Ultrahuman has intentionally copied both the marketing materials for Oura and the source code used to generate the look and feel of the user interface of the Ultrahuman App, resulting in independent economic loss for Oura. *See* Dkt. 9 at ¶¶ 90-98. The discovery and resolution of a limited patent dispute at the ITC would have no impact on issues related to the copyright infringement claims because the difference in claims between the ITC and district court involve entirely different theories of law. The different theories of law indisputably require different factual proofs, and thus are not duplicative or identical to the ITC Action.

Defendants misapply this Court's precedent by alleging that relatedness of claims is all that is required to justify a stay. That is incorrect. The copyright claims in this case result in substantially different proceedings between the ITC and this case. Indeed, this Court has determined that even where "the ITC Investigation could involve similar facts as the instant case, it is unlikely that the results of the investigation will simplify the work before the Court due to difference in issues." *AGIS Software*, 2023 WL 5351963 at *2. Because this case includes

copyright infringement (unlike in the ITC Action), it is unlikely that the Court here can "benefit from the discovery and ruling in the ITC Action" because an entirely different legal question than patent infringement requires different factual proofs.

Defendants also argue that this case should be stayed because they allege the patent infringement claims are the "main thrust" of the litigation. Defendants here, too, are wrong. The only plausible support Defendants give for this position is an artificial calculation that there are five counts in this case and four of them are for patent infringement. Dkt. 17 at 14-15. However, Defendants neglect to appreciate that each patent infringement count includes one patent only, whereas the copyright infringement count includes three copyrighted works. Thus, the balance between patent and non-patent is nearly equal. Moreover, the copyright claims do not implicate many of the same factual allegations as the patent claims. Oura's First Amended Complaint makes that abundantly clear. Dkt. 9 at ¶¶ 88-106.

2. <u>THERE IS ALSO NO SIMPLIFICATION OF ISSUES RELATED TO WILLFULNESS OF COPYRIGHT AND PATENT INFRINGEMENT</u>

As stressed above, Ultrahuman has engaged in willful conduct to copy the Oura Ring and its business from end-to-end, including copying the structural and functional design of the Oura Ring, the user interface design, and the marketing materials as shown in side-by-side comparison charts in Oura's First Amended Complaint. *See* Dkt. 9 at ¶¶ 11-13.

Because damages are not an issue at the ITC, respondents at the ITC (including Ultrahuman) have advocated for a limited discovery scope that carves out discovery related to any electronic communications that could shed light on a party's willful conduct. Plaintiffs in this case, however, would be entitled to any such discovery related to damages and willfulness. Thus, at the conclusion of the ITC Action, Oura would have to return to the beginning of this case and conduct discovery on both the original accused product (Ultrahuman Ring) that is no longer sold by

Ultrahuman and all conduct related to willfulness. No simplification is gained by requiring Oura to do that. The only advantage is to Ultrahuman, which would strategically benefit from the stay and the delay of all proceedings by continuing to enrich itself in the growing wearable ring market without compensating Oura.

For these reasons, the Court should decline to stay the current case because there is no simplification from a discretionary stay.

### C. OURA'S AGREEMENT IN THE CIRCULAR ACTION IS NOT APPLICABLE IN THIS CASE

Lastly, in its bid for a stay, Defendants' Motion repeatedly seeks to draw false parallels against the Circular Action where Plaintiffs agreed to a joint stay pending the resolution of the ITC investigation. But Oura's decision to stay the Circular Action is not relevant to the analysis here.

Unlike the present case, the Circular Action did not include any copyright infringement claims, or the blatant copying of Oura's copyrighted marketing and user interface designs to cause confusion in the market. Nor did Circular file any nuisance retaliatory suits against Oura in foreign jurisdictions. Instead, all relevant issues were litigated in courts in the United States. Circular also did not suggest that it planned to move its manufacturing capabilities to the United States immediately after institution of the ITC investigation in order to evade any potential ITC exclusion order. Moreover, unlike Ultrahuman, there were no allegations that Circular had hired or solicited any of Oura engineers to assist with its copying. And individuals from Circular (unlike Ultrahuman) were not engaged in impersonating Oura's CEO in an effort to spread false information online regarding Oura. Exs. 4-5.

Thus, while the facts in the Circular Action supported a joint stay, the facts in the current case against Ultrahuman do not. The two actions involve distinct issues. *AGIS Software*, 2023 WL 5351963 at *2 ("Further, the parties agree that the *AGIS I* case was stayed due to similarity in the

issues with the ITC Investigation, further supporting that the current case involves distinct issues from the other asserted actions.”). Ultrahuman’s egregious actions are not at all similar to the facts in the Circular Action and are the direct consequence of Defendants’ ***own*** actions. The underlying facts here are exceedingly different, unique, and bizarre. Applying the Court’s three-factor test, a discretionary stay is inappropriate.

## VI. CONCLUSION

For the foregoing reasons, Oura respectfully requests that this Court deny Defendants’ Motion to Stay this case in its entirety pending final resolution of the ITC Action, including any appeals. Because a stay should not be granted, Oura also respectfully requests this Court to deny Defendants’ request to vacate all deadlines in this case until the stay is lifted.

DATED: May 28, 2024

Respectfully submitted,

/s/ *Shaun W. Hassett*

Michael E. Jones, State Bar No. 10929400
Shaun W. Hassett, State Bar No. 24074372
**POTTER MINTON**
102 North College, Suite 900
Tyler, TX 75702
Tel: 903.597.8311
mikejones@potterminton.com
shaunhassett@potterminton.com

**ARENTFOX SCHIFF LLP**
Janine A. Carlan
Jasjit S. Vidwan *(pro hac vice)*
Ross Q. Panko (*pro hac vice*)
1717 K Street, NW
Washington, DC 20006-5344
Tel: 202.857.6000
janine.carlan@afslaw.com
ross.panko@afslaw.com
jasjit.vidwan@afslaw.com

Matthew T. Wilkerson (*pro hac vice*)
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
matthew.wilkerson@afslaw.com
Tel: 312.258.5500

*ATTORNEYS FOR PLAINTIFFS*