**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

ŌURA HEALTH OY and OURARING INC.

*Plaintiffs,*

v.

ULTRAHUMAN HEALTHCARE PVT. LTD. and ULTRAHUMAN HEALTHCARE LTD.

*Defendants.*

CASE NO. 2:23-CV-0396-JRG-RSP

**PLAINTIFFS' SURREPLY OPPOSITION TO DEFENDANTS' MOTION TO STAY**

# TABLE OF CONTENTS

**Page**

ARGUMENTS ........ 1

I. OURA'S POSITION ON A STAY HAS REMAINED CONSISTENT ........ 1

II. THE ITC SUIT INVOLVES DIFFERENT ISSUES THAN THE PRESENT ACTION ........ 2

III. OURA WOULD BE PREJUDICED BY A STAY ........ 3

IV. THE CIRCULAR ACTION IS INAPPLICABLE ........ 5

CONCLUSION ........ 5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AGIS Software Dev. LLC v. Samsung Elec. Co., Ltd.*,
2023 WL 5351963 (E.D. Tex. Aug. 21, 2023) ....................2, 3

*Artic Cat Inc. v. Bombadier Recreational Prods. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017)....................5

*Invensys Sys., Inc. v. Emerson Elec. Co.*,
2014 WL 4477393 (E.D. Tex. July 25, 2014) ....................4

*Paradox Sec. Sys. Ltd. v. ADT Sec. Servs., Inc.*,
2008 WL 11348406 (E.D. Tex. Oct. 8, 2008) ....................5

*In re Princo Corp.*,
486 F.3d 1365, 1368 (Fed. Cir. 2007)....................3

*Saxon Innovations, LLC v. Palm, Inc.*,
2009 WL 3755041(E.D. Tex. Nov. 4, 2009) ....................3

**Statutes**

28 U.S.C. § 1659....................2

28 U.S.C. §1659(a) ....................2

35 U.S.C. § 284....................5

## ARGUMENTS

There are different factual and legal issues in this case from the ITC Investigation such that a stay is not mandated nor appropriate. A stay of the case would significantly prejudice Oura and introduce judicial inefficiency. Thus, Oura requests that the Court deny Ultrahuman's Motion.

### I. OURA'S POSITION ON A STAY HAS REMAINED CONSISTENT

Defendants continue to conflate "same issues" with "same patents," thereby putting their argument in an untenable position. Defendants, however, allege that Oura shifted its position regarding the mandatory stay. Dkt. 25 at 1. This is not true as Oura's position has remained consistent within the shifting landscape of events leading up to the filing of Defendants' Motion.

As an initial matter, much of the meet-and-confers leading to Ultrahuman's Motion to stay were focused on whether *Ultrahuman* would agree to drop, in whole or in part, its retaliatory nuisance suit in India prompted by allegations made by Oura when filing suit in this Court. *See* Dkt. 22, Ex. 3 (Ultrahuman's India Complaint) at ¶8 ("Defendant Companies [Oura] . . . have filed a lawsuit in the United States District Court for The Eastern District of Texas . . . It is humbly submitted that Defendant Companies have made false and defamatory pleadings in bad faith in the said lawsuit against the Plaintiff [Ultrahuman]").[1] Moreover, when the parties met and conferred, Oura was unaware that the Ultrahuman Ring R1 was no longer sold or imported into the United States. Ultrahuman, in contrast, knew that information all along but withheld it during multiple conversations. The fact that Ultrahuman Ring R1 is no longer sold or imported was made available to Oura with Defendants' ITC Answer, which was filed on May 16, 2024, one week after the

[1] Indeed, if Ultrahuman was offended that it was accused of patent infringement in this Court, then why seek a stay and not defend those allegations in the same Court instead of filing and maintaining a retaliatory suit in India?

parties last met-and-conferred. *Compare* Dkt. 17 at Certificate of Conference *with* Ex. 11. This change in circumstances forces Oura to object to a stay of any portion of this case.

When viewed in the totality, it is clear that Ultrahuman is attempting to stay the proceedings before the Court, maintain its nuisance retaliatory suit in India, and shift its manufacturing production to the U.S. to circumvent any ITC exclusion order. Such a result would be extremely prejudicial to Oura and obviate any consequences of Ultrahuman's infringement.

## II. THE ITC SUIT INVOLVES DIFFERENT ISSUES THAN THE PRESENT ACTION

While 28 U.S.C. § 1659 allows for a mandatory stay in certain circumstances, the issues between this proceeding and the ITC investigation are not the same, and the mandatory stay is not triggered. *See generally*, Dkt. 22; *see also id.* at n. 5.

It is undisputed that unlike the ITC Investigation, this case involves an additional patent (the '833 patent) and a copyright infringement claim on three copyrighted works. *See* Dkt. 9, ¶2. On that basis alone, the issues between the ITC and this case are different and the Court should reject Defendants' attempt to parse this case on a count-by-count basis. Indeed, in *AGIS*, similar to Ultrahuman here, the defendant had argued that a mandatory stay was triggered because the same parties, patents, and products were before the ITC. *AGIS Software Dev. LLC v. Samsung Elec. Co., Ltd.*, 2023 WL 5351963, at *1-2 (E.D. Tex. Aug. 21, 2023). But the Court denied the motion to stay because it was unclear whether all the same features and thus the issues were the same. *Id.* at *2. The Court did not entertain a piecemeal approach that Ultrahuman advocates for here. The fact that the copyright claims and the '833 patent are not before the ITC provides sufficient reason to not stay the case.

But even the '178, '179, and '429 patents that are asserted in both the ITC Investigation and this case do not create the "same issues" as courts have interpreted 28 U.S.C. §1659(a). This

is because the accused products that will be litigated on the merits (i.e., validity and infringement) at the ITC are different from those asserted in this case. *See AGIS*, 2023 WL 5351963, at *2 (finding no same issues where different products are accused in the district court) (citing *Saxon Innovations, LLC v. Palm, Inc.*, 2009 WL 3755041, *1 (E.D. Tex. Nov. 4, 2009); *In re Princo Corp.*, 486 F.3d 1365, 1368 (Fed. Cir. 2007)). Specifically, as noted in Oura's Opposition, Defendant's "Ultrahuman Ring R1" product is now discontinued and no longer manufactured or imported into the United States. Dkt. 22 at 8. Because Oura is entitled to damages in this case related to products that are discontinued, the issues related to infringement of the Ultrahuman Ring R1 will need to be litigated on the merits here.

Defendants, however, take inconsistent positions at the ITC and this Court as to the accused products. Before the ITC, Defendants continuously assert that the products are distinct. *See* Dkt. 22, Ex. 1 at 10. But here, and solely in the interest of obtaining a stay, Defendants argue that the "accused features here are thus the same as those in the ITC." Dkt. 25 at 3. Ultrahuman cannot have it both ways. Simply put, the issues in this case do not overlap with the ITC Investigation, and therefore the Court should reject Ultrahuman's requested stay.

## III. OURA WOULD BE PREJUDICED BY A STAY

Defendants attempt to improperly pass the buck and continually fail to take any accountability for their nefarious acts. Instead, Defendants ask this Court to delay justice and punish Oura for vigorously defending its intellectual property rights. Oura is substantially prejudiced and there is no simplification from a stay purely as a result of Defendants' egregious and willful infringing conduct.

Defendants' assertion that Oura will face no prejudice from Defendants' plan to evade ITC remedies is a fantasy. Dkt. 25 at 4-5. Tellingly, Defendants' argument of no prejudice from their planned U.S. manufacturing is for Oura to limit its protection of its intellectual property rights by

forfeiting a statutorily proscribed enforcement mechanism. Dkt. 25 at 4 ("any prejudice Oura may face related to Ultrahuman's plan to open a U.S. manufacturing facility is a problem that Oura created itself . . . Oura is free to dismiss that suit"). Defendants also conveniently ignore the order of events: Defendants announced their intention to move manufacturing to the U.S. only *after* the initiation of the ITC Action. Dkt. 22 at 9-10, Ex. 2. Having publicly announced their plan to shift the manufacturing production to the U.S. to avoid any ITC exclusion order, Defendants shift sands again here and argue that the prejudice is "speculative and contingent on Ultrahuman *actually* moving its entire manufacturing process to the U.S." Dkt. 25 at 4 (emphasis added). The continually changing strategy and statements from Ultrahuman here—similar to its position on whether Ultrahuman Ring R1 is same product or different product from its current line—should be seen for what it is: a consistent attempt to evade any liability through gamesmanship and efforts to maintain its infringing acts.

Following this Court's precedent, prejudice is presumed here because of the totality of circumstances. *Invensys Sys., Inc. v. Emerson Elec. Co.*, 2014 WL 4477393, at *2 (E.D. Tex. July 25, 2014). Defendants' Reply never disputes that the parties here are direct competitors in a small wearable smart ring market with limited participants. Instead, Defendants ask this Court to look to a district court from a different circuit to argue that this Court should not find prejudice. *Id.* That position is untenable. Defendants also request this Court to create a requirement that Oura file a preliminary injunction to show prejudice (Dkt. 25 at 4), which the Court has already outright rejected. *See* Dkt. 25 at 4; *cf. Invensys Sys.*, 2014 WL 4477393, at *2 ("[T]his Court rejects Defendants' argument that [Plaintiff] will not be unduly prejudiced by a stay because it has not sought preliminary injunctive relief."). Like here, where the parties are direct competitors in a small market, the significant delay resulting from a stay militates against granting a discretionary

stay. *Paradox Sec. Sys. Ltd. v. ADT Sec. Servs., Inc.*, 2008 WL 11348406, at *1 (E.D. Tex. Oct. 8, 2008).

As explained in its Opposition (Dkt. 22) Oura's prejudice from a stay is substantially elevated due to Defendants' conduct. Defendants have continually engaged in pirate-like behavior in their infringement of Oura's intellectual property rights. Conduct sufficient to reach willful infringement is an elevated harm that is so self-evident that the statutory remedy for such behavior is treble damages. 35 U.S.C. § 284; *see, e.g.*, *Artic Cat Inc. v. Bombadier Recreational Prods. Inc.*, 876 F.3d 1350, 1371-72 (Fed. Cir. 2017).

## IV. THE CIRCULAR ACTION IS INAPPLICABLE

Oura's agreement with Circular is not applicable here for a host of reasons, including the prejudice that Oura would suffer due to Ultrahuman's ongoing activities. *See* Dkt. 22 at 14. Ultrahuman attempts to sidestep those inconvenient facts as "mudslinging" or facts that are not alleged in the Complaint. *See* Dkt. 25 at 1 and 5. But it is telling that Ultrahuman does not deny any of the allegations because it cannot. The fact that the ongoing activities have continued even *after* the filing of Oura's Complaint and continue to do so cuts against Ultrahuman's argument that a stay would not prejudice Oura. Defendants' conduct is highly relevant to the discretionary stay analyses because it exhibits Oura's undue prejudice resulting from a stay. Defendants' wanton conduct in this case is what distinguishes Oura's agreement to stay the Circular Action and opposition to a stay in this case because the two cases present unique issues.

## CONCLUSION

For the foregoing reasons, Oura respectfully requests this Court to Deny Defendants' Motion to Stay.

DATED: June 11, 2024

Respectfully submitted,

/s/ *Shaun W. Hassett*

Michael E. Jones, State Bar No. 10929400
Shaun W. Hassett, State Bar No. 24074372
**POTTER MINTON**
102 North College, Suite 900
Tyler, TX 75702
Tel: 903.597.8311
mikejones@potterminton.com
shaunhassett@potterminton.com

**ARENTFOX SCHIFF LLP**
Janine A. Carlan
Jasjit S. Vidwan *(pro hac vice)*
Ross Q. Panko (*pro hac vice*)
1717 K Street, NW
Washington, DC 20006-5344
Tel: 202.857.6000
janine.carlan@afslaw.com
ross.panko@afslaw.com
jasjit.vidwan@afslaw.com

Matthew T. Wilkerson (*pro hac vice*)
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
matthew.wilkerson@afslaw.com
Tel: 312.258.5500

*ATTORNEYS FOR PLAINTIFFS*